By the Court,

Cowen, J.
The first question arises on the second and third pleas. It is not denied that the plaintiffs are in general privileged against the statute of limitations; (vid. United States v. Hoar, 2 Mason, 311; Same v. Buford, 3 Pet. 12; People v. Gilbert, 18 John. R. 227;) but it is insisted that the rule does not apply to a claim which they take as transferees from another, even though they acquire' the legal interest, and are therefore entitled to an action in *61 their own name. This would no doubt be trac, if the statute had begun to ran against the claim while it was in the hands of the assignor; but in the case at bar it did not. We must take it on the pleadings that the plaintiffs became holders and owners of the note before it fell due. They took a legal right in a demand against which the statute might have run in the hands of the assignors, had it continued there long enough. But the statute was not inherent in it, any more than in land or any other property which may come to be owned by the United States. (Vid. United States v. Buford, 3 Pet. Rep. 12, 30.) The third plea is admitted to be bad. It is non assumpsit, infra, &c. to a note payable after date.
Though the demurrer be to the pleas, and they bad, yet the defendants may still prevail if the counts be defective in substance. The second count is especially assailed ; but conceding that to be bad, this is not enough for the defendants’ purpose. Upon the state of pleading it is sufficient that the first count be good; for the pleas are to both. The objection is therefore of the nature of a demurrer to the whole declaration, which shall stand if any one count be good.
The first count sets forth that the defendants made and delivered their promissory note to Samuel W. Adams, and thereby promised to pay to the order of the person who should thereafter endorse said note. It then avers an endorsement to the plaintiffs by Adams. This clearly entitles the plaintiffs to sue in their own name, and would have entitled an ordinary person. The maker of a note may bind himself to the bearer generally; and a promise to pay such bearer as shall come to the possession of the note in any given mode, is but a more limited exercise of the same power. It is like making a note payable in blank, which may be filled up by a bona fide holder with his own name ; indeed, it is but a more enlarged form of the ordinary promise to the payee or order, or the order of the payee. If it could' have effect in no other way, we should hold it payable to bearer generally, like a bill pay *62 able to a fictitious payee or order, (Gibson v. Minet, 1 H. Bl. 569.) It may, says Mr, Chitty, be collected from this and its kindred cases, “ that any words in a bill, from whence it can be inferred that the person making it, or any other party fo it, intended it to be negotiable, will give it a transferable quality against that person,” (Chit, on Bills, 218, Am. ed. of 1839.)
The case may also be considered in another point of view, even if this note be not strictly negotiable, but stand on the footing of an ordinary chose in action. The defendants have, by the form of the paper, given power to any one by endorsement to make an assignment of the debt, or, which is the same thing in effect, to point out and fix the payee. This assignment is made to the United States, which, like the king of England or the people of this state, may, with great propriety, and in analogy to the very principle which forbids the statute of limitations to run against them, in virtue of their prerogative, take the legal interest by the assignment of any chose in action. (2 Bl. Com. 442. United States v. Buford, 3 Pet, 12, 30, per McLean, J)
On the whole, we cannot bring ourselves to doubt that the first count of the declaration is good.
This disposes of the second and third pleas. They are both bad; and cannot escape the consequence of being so, by the attack which has been made upon the declaration.
We come now to a consideration of the fifth plea, which is to the second count only. The demurrer to this plea involves the same course of inquiry as the other demurrers. It is clearly bad in itself for duplicity; but claims and is entitled to the same privilege with the other pleas, that of going back and attacking the count which it professes to answer. In that count, the note is stated as being payable to the order of the endorser’s name; and the interest might clearly have been fixed in any one by an endorsement like that which we have supposed competent to transfer the note as it is described by the first count. We think, however, if the United States are to be treated as an ordinary *63 person, the legal interest in the note must be considered as having stopped, and is still continuing to rest in the navy commissioners. The order of Adams runs to them; and although enough appears, perhaps, to raise an equitable interest in the United States, yet, properly, either Adams should have endorsed and delivered the note to the United States, or, at least, the navy commissioners should have done so after his endorsement to them. We want to see a legal interest in the party who sues a note. It is not enough that he be a mere cestui que trust under a special endorsement to another.
But we think the second count contains enough to show an oral assignment to the United States. The note is in itself available as against the makers in the name of any actual endorsee, of Adams or any other. He made his order in favor of the navy commissioners. But connected with this, there is an averment which gives another character to the whole transaction. It is, that all this machinery was originally got up by makers, endorser and endorsees, to secure a debt actually due to the United States; and that the note was made and immediately endorsed to the commissioners, but delivered to the United States for that purpose. In short, the amount of the averment is, that the note, though not in form payable to the United States, was in effect assigned to them on the very day of its date for a valuable consideration, viz. the precedent debt due from some one to them.
We entertain no doubt, on reflection, that the United States hold the same prerogative for the purpose of taking by assignment, the legal interest in á chose in action, as the. king or queen regent of England.
The result is, that judgment must be given for the United States upon all the demurrers.
Judgment for plaintiffs.