## Case No. 15,373.

### UNITED STATES v. HOAR.

[2 Mason, 311.] [1]

Circuit Court. D. Massachusetts. Oct. Term, 1821.

LIMITATIONS OF ACTIONS—INAPPLICABLE TO UNITED STATES—ADMINISTRATORS—PLEADING.

1. Neither the general statute of limitations, nor the statute of limitations of Massachusetts, as to executors and administrators binds the United States in a suit in the circuit court: and, of course, neither can be pleaded in bar of such suit.

[Cited in note to U. S. v. Wilson, 8 Wheat. (21 U. S.) 256. Cited in U. S. v. Greene, Case No. 15,258; U. S. v. Hewes. Id. 15,-359; Armstrong v. Morrill. 14 Wall. (81 U. S.) 145. Gibson v. Chouteau. 13 Wall. (80 U. S.) 99; U. S. v. Tetlow, Case No. 16,456; Dollar Sav. Bank v. U. S. 19 Wall. (86 U. S.) 239; U. S. v. Herron. 20 Wall. (87 U. S.) 263; U. S. v. City of Alexandria. 19 Fed. 612; U S. v. Southern Colo. C. & T. Co., 18 Fed. 279; U. S. v. Houston, 48 Fed. 210.]

[Cited in Baxter v. State, 10 Wis. 455; Re City of Utica (Sup.) 26 N. Y. Supp. 566. Cited in brief in Re Fox. 52 N. Y. 531; Knox v. Chaloner, 42 Me. 154. Cited in Mayrhofer v. Board of Education, 89 Cal. 112, 26 Pac. 646; People v. Clark. 9 N. Y. 361; St. Charles Co. v. Powell. 22 Mo. 527; State v. Franklin Falls Co., 49 N. H. 252; State v. Kelsey. 44 N. J. Law. 44; Topsham v. Blondell. 82 Me 154. 19 Atl. 94; Trustees of Public Schools v. Trenton. 30 N. J. Eq. 684. Cited in brief in U. S. v. San Pedro & Canon Del Agua Co. (N. M.) 17 Pac. 338.]

2. A general plea of plene administravit may be good. where all the property of the intestate has been exhausted in a regular course of ad-

ministration. But if exhausted in paying debts, without notice of a debt having a legal priority, that fact should be specially pleaded.

[Cited in Bassett v. Granger. 136 Mass. 177; Cumberland v. Pennell, 69 Me. 372; Thurlough v. Kendall, 62 Me. 167.]

3. In what cases a special plea of plene administravit is necessary at the common law, or under Massachusetts statutes.

[In error to the district court of the United States for the district of Massachusetts.]

This was a writ of error from the judgment of the district court. The original action was assumpsit for money had and received, brought by the United States against the defendant in error [Samuel Hoar, Jr.], as administrator of the estate of Col. John L. Tuttle, deceased. The defendant pleaded, (1) the general statute of limitations of Massachusetts (St. Feb. 13, 1787; 1786, c. 52, —substantially like the statute of 21 Jac. c. 16, § 3) to personal actions; (2) the statute of Massachusetts (St. Feb. 14, 1789; 1788, c. 66; and Feb. 14, 1792; 1791, c. 28) limiting suits against executors and administrators to four years after the acceptance of the trust; (3) plene administravit. To the two first pleas the plaintiffs demurred, and to the third plea replied, that the estate of Tuttle is fully sufficient to pay all his debts and the charges of administration. To this replication the defendant demurred; and upon joinder in demurrer to all the pleas, the district court gave a pro forma judgment for the defendant. [Case unreported.]

G. Blake, U. S. Dist. Atty.
S. Hoar, Jr., for defendant.

STORY, Circuit Justice. The only point, which has been argued here, is, whether the United States are barred of their suit by the statutes of limitations of Massachusetts above pleaded. It has not been denied, and indeed is too plain for argument, that the statutes of limitations of Massachusetts cannot proprio vigore bind or bar the suits of the national government in the national courts. If such an effect can be attributed to them, it can only be by reason of some extension of them for this purpose, by the national legislature. And it is contended, that such is the effect of the 34th section of the judiciary act of 1789, c. 20 [1 Stat. 92]. That section declares, "that the laws of the several states, except where the constitution, treaties, or statutes of the United States shall otherwise require or provide, shall be regarded as rules of decision in trials at common law in the courts of the United States, in cases where they apply." The whole stress of the argument, therefore, turns upon the question, whether this is a case, where the laws of the state do apply. Now, I think, it may be laid down as a safe proposition. that no statute of limitations has been held to apply to actions brought by the crown, unless there has been an express provision including it. For it is said, that,

where a statute is general, and thereby any prerogative, right, title, or interest is divested or taken from the king, in such case the king shall not be bound, unless the statute is made by express words to extend to him. Bac. Abr. "Prerogative," E. 5. And, accordingly, it was ruled in the Case of Magdalen College, 11 Cooke, 68, 74b. 1 Rolle. 151, that "the king has a prerogative, quod nullum tempus occurrit regi, and, therefore, the general acts of limitation, or of plenarty, shall not extend to him." And the same doctrine is maintained in the most respectable authorities. Plowd. 244, 3 Inst. 188; Bac. Abr. "Prerogative," E. 5, p. 561; Com. Dig. Pr. D 86; Temps. G. 11; Bro. St. Lim. 67. It is true, that Bracton lays down a different doctrine as to certain crown lands, for he says (Bract. lib. 2, c. 5, § 7): "Sunt etiam aliæ res quæ pertinent ad coronam, quæ non sunt ita sacræ, quin transferri possunt, sicut sunt fundi, terræ et tenementa et hujus modi, per quæ corona regis roboratur et in quibus currit tempus contra regem, sicut contra quamlibet privatum personam." And Staunford, citing this passage, says, this is as much as to say, that if the king had right to any such lands or tenements, and had surceased his time, so long, that it exceeded the time of limitation in a suit of right, he had lost then his right forever. Staunf. Pr. 42b. And in Britton's time the same rule prevailed, for he declared, that as to lands not held as appurtenant to the crown, the prescription in a suit of right shall run against the king, as against other people. Britton, De Droit Le Roy, c. 18, p. 29. As to lands and other things held jure coronæ, it is manifest, as well from Bracton as from Britton, that the rule governed, quod nullum tempus occurrit regi. Bract. lib. 3, c. 3, p. 103; Britton, c. 18, p. 29. But however this distinction may anciently have been, it is clear from the authorities, that the rule, excepting the crown from the operation of the statutes of limitation, has for several centuries universally prevailed; and a recent statute (9 Geo. III. c. 16) was the first that expressly limited the right to recover any estate or hereditaments. The true reason, indeed, why the law has determined, that there can be no negligence or laches imputed to the crown, and, therefore, no delay should bar its right, though sometimes asserted to be, because the king is always busied for the public good, and, therefore, has not leisure to assert his right within the times limited to subjects (1 Bl. Comm. 247), is to be found in the great public policy of preserving the public rights, revenues, and property from injury and loss, by the negligence of public officers. And though this is sometimes called a prerogative right, it is in fact nothing more than a reservation, or exception, introduced for the public benefit, and equally applicable to all governments. We find accordingly, in our own state, the doctrine is well settled, that no laches can be imputed to the government, and against

it no time runs, so as to bar its rights (Inhabitants of Stoughton v. Baker, 4 Mass. 528); so, that it is clear, that the statutes of limitations pleaded in this case would be no bar to a suit brought to enforce any right of the state in its own courts.

But, independently of any doctrine founded on the notion of prerogative, the same construction of statutes of this sort ought to prevail, founded upon the legislative intention. Where the government is not expressly or by necessary implication included, it ought to be clear from the nature of the mischiefs to be redressed, or the language used, that the government itself was in contemplation of the legislature, before a court of law would be authorized to put such an interpretation upon any statute. In general, acts of the legislature are meant to regulate and direct the acts and rights of citizens; and in most cases the reasoning applicable to them applies with very different, and often contrary force to the government itself. It appears to me, therefore, to be a safe rule founded in the principles of the common law, that the general words of a statute ought not to include the government, or affect its rights, unless that construction be clear and indisputable upon the text of the act.

It has not been contended in argument, that the judiciary act of 1789, in the section under consideration, meant to enlarge the construction of the statutes of Massachusetts. It is most manifest, that the terms give the same efficacy, and none other, to these statutes in the federal, that they have proprio vigore in the state, courts. And yet, unless this doctrine of enlargement can be maintained, it is difficult to perceive upon what ground the case of the defendant can be supported. The statutes of Massachusetts could not originally have contemplated suits by the United States, not because they were in substance enacted, before the federal constitution was adopted, on which I lay no stress; but because it was not within the legitimate exercise of the powers of the state legislature. It is not to be presumed, that a state legislature mean to transcend their constitutional powers; and, therefore, however general the words may be, they are always restrained to persons and things, over which the jurisdiction of the state may be rightfully exerted. And if a construction could ever be justified, which should include the United States, at the same time, that it excluded the state, it is not to be presumed, that congress could intend to sanction an usurpation of power by a state to regulate and control the rights of the United States. In the language of the act of 1789, it would not be a case, where the laws of the state could apply. The mischiefs, too, of such a construction, would be very great. The public rights, revenue, and property would be subject to the arbitrary limitations of the states; and the limitations are so various in these states, that the government would

hold their rights by a very different tenure in each. I am of opinion, therefore, that the first and second pleas of the defendant are bad in point of law, and, that judgment ought to be for the plaintiffs.

As to the third set of pleadings, it is impossible to sustain the replication as a good answer to the plea of plene administravit, for it neither denies nor avoids the matter of that plea. If the United States meant to deny that matter, it is surprising, that the usual anl technical replication was not made; and if it meant to admit the truth and justice of that plea, the true course was to have admitted the same in terms, and prayed judgment of assets quando acciderint. But here, the replication does neither. It asserts, that there are assets of the deceased, not saying in the hands of the administrator, sufficient to pay all his debts, and yet does not take issue upon the point of plene administravit. It is a perfectly anomalous and incongruous pleading, and is bad in substance as well as in form.

The only remaining question, is, whether the plea of plene administravit generally is good in this case. It is suggested at the bar, that under the peculiar system of laws of Massachusetts, this plea, however good at common law, is not sustainable. By these laws the rights of creditors of a deceased debtor are equal, and no one has a priority over another, but all are to be paid pari passu, excepting debts to the United States, to the commonwealth, and for charges of the last sickness and funeral of the deceased, which have a priority, where the estate is insolvent. Jewett v. Jewett, 5 Mass. 275; Act Cong. March 3, 1797, c. 74, § 5; [1 Story's Laws, 465; 1 Stat. 515, c. 20]; Fisher v. Blight, 2 Cranch [6 U. S.] 358. It is supposed, therefore, that in cases of insolvency, the administrator is bound to pursue the statute provided for such cases, and can avail himself only of the special plene administravit growing out of the provisions of that statute. If the estate be in fact insolvent, the administrator cannot lawfully prefer one creditor to another in the payment of debts; and if he pays one creditor in full to the injury of the others, it will be a wasteful administration, and at his own peril. While a single creditor remains unpaid, if the assets are exhausted, the administrator is guilty of waste. Such, as I understand it, is the drift of the argument.

Now, in the first place, it does not appear to me, that upon principle any special plea of plene administravit is necessary, where the assets have been in fact paid according to the directions of the statute of insolvency; for if the assets are rightfully applied, the mode is matter of evidence and not of pleading. A special plene administravit can only be necessary, where the administrator either admits assets to a limited extent, or he sets up a right of retainer for the payment of other debts, to which they are le-

gally appropriated, or he has paid debts of an inferior nature, without notice of the plaintiff's claim. And so is the doctrine of the common law according to the better authorities. Hickey v. Hayter, 6 Term R. 384; Toll. Ex'rs, bk. 3, c. 2, § 2, pp. 267, 282; Parker v. Atfield, Salk. 311; Toll. Ex'rs, bk. 3, c. 3, p. 298; Id. bk. 3, c. 5, p. 357; 1 Saund. 333, note 6, 334, note 8; 3 Bac. Abr. "Executors and Administrators," L. pp. 77, 82. In the next place, it seems to me, that there may be cases, where the estate may be insolvent, and yet the administrator would not be bound to procure a commission, and proceed under the statute of insolvency. If, for example, the assets were less than the privileged or priority debts, a commission of insolvency would be utterly useless to the other creditors; and surely the law would not force the administrator to nugatory acts. In such a case it seems to me, that a general plene administravit would be good, if the administrator had in fact applied the assets in discharge of such debts. If he had not so applied them, then he might specially plead these debts and no assets ultra. Other cases may be put of an analogous nature; and unless some stubborn authority could be shewn, founded in our local jurisprudence (and none such has been produced), I should not be bold enough to overrule, what I consider a most salutary doctrine of the common law. Judgments, bonds, and some other debts at the common law are privileged debts, and are entitled to a priority of payment. And yet, if the administrator have no notice either actual or constructive of such privileged debts, he will be justified in paying debts of an inferior nature, provided a reasonable time has elapsed after the decease of the intestate. Com. Dig., "Administration," C. 2; 3 Bac. Abr. "Executors and Administrators," L. p. 82, and Guillim's note; Sawyer v. Mercer, 1 Term R. 690; Toll. Ex'rs, bk. 3, c. 2, pp. 292, 293; Britton v. Batthurst, 3 Lev. 114. And in principle there cannot be any just distinction, whether such payment be voluntary or compulsive. Toll. Ex'rs, bk. 3, c. 2, p. 293. But in such case, if he be afterwards sued for such privileged debt, he cannot plead plene administravit generally, but is bound to aver, that he had fully administered before notice of such debt. Sawyer v. Mercer, 1 Term R. 690; Toll. Ex'rs, bk. 3, c. 2, p. 293. Now it is precisely in this view, that the plea of the defendant is defective. The debt of the United States is a privileged debt, and the plea should have shown, that the assets were exhausted before knowledge of this debt. It seems to me, therefore, that the plea must be adjudged bad.

In point of fact, it is admitted at the bar, and by the pleadings, that Col. Tuttle's estate is solvent; but the administrator has, in consequence of the lapse of time, and in pursuance of the general principles of law,

distributed the surplus assets after the payment of all known debts among the heirs. Whether such a distribution, either voluntary or under a probate decree, would protect him from a suit by the United States, need not now be decided. If it would not, the United States might well have taken issue on the plene administravit; if it would, it ought to have been specially pleaded. Judgment for United States.