## No. C-10.

### Vivian Evans *v.* The Board of County Commissioners of the County of El Paso.
(482 P.2d 968)

Decided March 22, 1971.    Rehearing denied April 12, 1971.

QUIGLEY, WILDER & PALERMO, P.C., RICHARD V. HALL, for plaintiff-appellant.

TILLY & GRAVES, WILLIAM H. HARING, RONALD O. SYLLING, for defendant-appellee.

*En Banc.*

MR. JUSTICE GROVES delivered the opinion of the Court.

THE parties appear here in the same order as in the trial court. The plaintiff alleged that while en route to jury duty she sustained a personal injury as a result of carelessness on the part of the county commissioners in permitting the concrete steps at the El Paso County Courthouse to deteriorate and to constitute a dangerous hazard. The court on motion dismissed the complaint under the doctrine of governmental immunity. We reverse and depart from that doctrine.

In opinions announced contemporaneously with this one, the majority of this court is rejecting the doctrines of governmental immunity of school districts (*Flournoy v. School District No. 1 of Denver,* 174 Colo. 110, 482 P.2d 966), and sovereign immunity of the State of Colorado (*Proffitt v. State of Colorado,* 174 Colo. 113, 482 P.2d 965). We use this opinion as the vehicle to express our views not only with respect to the instant matter but also as to the other two cases.

The majority opinion in *Tesone v. School District,* 152 Colo. 596, 384 P.2d 82 (1963), upheld the doctrine of governmental immunity. A concurring opinion there commenced as follows:

"I concur in the [majority] opinion .... In view of the fact that [the justice] in his dissenting opinion has once more seen fit to advocate that we should overrule the considered opinions of this court in at least forty cases extending over a period in excess of eighty-five years, I must again direct attention to certain fundamental principles which I believe would be ignored or violated if a majority of this court were to follow the course suggested by said dissent."

Nevertheless, the majority of this court has now concluded not to follow those "fundamental principles."

One finds a certain sameness in many of the opinions of the appellate courts in the various states which, as here, overturn the doctrines of sovereign and governmental immunity, and in the dissents to those opinions which uphold the doctrines.[1] One finds frequently a refutation of the proposition that the doctrines came from the common law. It is stated that the doctrine of sovereign immunity was not part of the common law, *i.e.*, that there could be a petition of right under which the sovereign was in effect sued;[2] or that the doctrine that the King (an individual) can do no wrong is not a proper basis for a declaration that a corporate state should have sovereign immunity;[3] or that *Russell v. The Men of Devon*, 100 Eng. Rep. 359 (K.B. 1788) (which so many times has been cited to show that the common law recognized the

---

1. *Stone v. Arizona Hwy. Comm.*, 93 Ariz. 384, 381 P.2d 107 (1963); *Parish v. Pitts*, 244 Ark. 1239, 429 S.W.2d 45 (1968); *Muskopf v. Corning Hospital District*, 55 Cal. 2d 211, 359 P.2d 457, 11 Cal. Rptr. 89 (1961); *Hargrove v. Town of Cocoa Beach*, 96 So.2d 130 (Fla. 1957); *Smith v. Idaho*, 93 Idaho 795, 473 P.2d 937 (1970); *Molitor v. Kaneland Community Unit District*, 18 Ill. 2d 11, 163 N.E.2d 89 (1959); *Haney v. City of Lexington*, 386 S.W.2d 738 (Ky. 1964); *Spanel v. Mounds View School District*, 264 Minn. 279, 118 N.W.2d 795 (1962); *Holytz v. Milwaukee*, 17 Wis. 2d 26, 115 N.W.2d 618 (1962); and dissenting opinion of Roberts, J., in *Smeltz v. Copeland*, 440 Pa. 224, 269 A.2d 466 (1970).

2. *Muskopf, supra* note 1; Borchard, *Governmental Responsibility in Torts*, 36 Yale L. J. 1 (1926); and 9 *Holdsworth, History of English Law* 7-45 (1926).

3. Borchard, *Governmental Responsibility in Torts*, 36 Yale L. J. 1, 38-39 (1926); and Borchard, *Government Liability in Tort*, 34 Yale L. J. 1, 4-5 (1924).

doctrine of governmental immunity) is no authority for application of the doctrine to political subdivisions, including municipal corporations, since *Men of Devon* was an action against the population of an unincorporated town.

It is possible that sovereign immunity as we know it stems in large part from the transformation in the English kingship, including augmented powers and divine and transcendental characteristics, which was occasioned by the Tudor monarchs, particularly Henry VIII, in pursuit of such ends as the split of the Church of England from the Church of Rome and the unity of temporal and spiritual life in England.[4] The monarchical philosophies invented to solve the marital problems of Henry VIII are not sufficient justification for the denial of the right of recovery against the government in today's society. Assuming that there was sovereign immunity of the Kings of England, our forebears won the Revolutionary War to rid themselves of such sovereign prerogatives.[5]

Frequently there has been mentioned the injustice and inequity — even absurdity — of having recovery for negligence against individuals and against firms for negligence of their employees, but no recovery against governmental units for the negligence of their employees.[6] We see mentioned in the cases the incongruity of recovery against a municipality when it is engaging in a proprietary function for negligence of its employees, but no recovery if the employee — just as negligent — is en-

4. Borchard, *Governmental Responsibility in Torts,* 36 Yale L. J. 1; 757 (1926) ; 4 *Holdsworth, History of English Law* 190-217 (1926) ; 9 *Holdsworth, History of English Law,* 4-13 (1926) ; Laski, *The Responsibility of the State in England,* 32 Harv. L. Rev. 447, 448-50 (1919) ; and dissenting opinion of Frantz, J., in *Liber v. Flor,* 143 Colo. 205, 353 P.2d 590 (1960).

5. *Hargrove v. Town of Cocoa Beach,* 96 So.2d 130 (Fla. 1957) ; and dissenting opinion of Frantz, J., in *Denver v. Madison,* 142 Colo. 1, 351 P.2d 826 (1960).

6. *Smith, supra* note 1; *Molitor, supra* note 1, *Perkins v. Indiana,* 252 Ind. 549, 251 N.E.2d 30 (1969) ; *Brown v. Omaha,* 183 Neb. 430, 160 N.W.2d 805 (1968) ; *McAndrew v. Mularchuk,* 33 N.J. 172, 162 A.2d 820 (1960) ; and 9 *Holdsworth, History of English Law* 42-45 (1926).

gaged in a governmental function.[7] It has been thought that the existence of legislatively authorized insurance for torts of governmental officers is inconsistent with continued insistence upon immunity.[8] It has been repeatedly stated that the doctrines of sovereign and governmental immunity have been made by the courts and, when it appears that these rules were wrong when made and wrong currently, the courts should abolish the rule. Some courts and writers, while not wishing to state that the older decisions were wrong when decided, take the position that the intervening vicissitudes of society have necessitated a change in the law.[9] We agree with these points of view. While there is a temptation to expound on them at length, they are so well — and oftimes eloquently — discussed in many of the authorities to which attention has already been directed in footnotes that our comments will not be extended.

It can be stated frankly that this decision casting aside stare decisis results from a different philosophical outlook in the minds of the majority of the court today than was in the minds of the majority of the court as it pronounced and re-pronounced the doctrines through the past many years. Obviously, there is ample authority to continue application of the doctrine, and there is an abundance of authority to overturn it. A majority of us simply think that the doctrines are causing too great a degree of injustice.

The first session of the Legislative Assembly of the

7. *Molitor, supra* note 1; *Brinkman v. Indianapolis*, 141 Ind. App. 662, 231 N.E.2d 169 (1967); *Haney, supra* note 1; *Spanel, supra* note 1; *Hahn v. Ortonville*, 238 Minn. 428, 57 N.W.2d 254 (1953); *Holytz, supra* note 1; and dissenting opinion of Doyle, J., in *Denver v. Madison*, 142 Colo. 1, 351 P.2d 826 (1960).

8. *Thomas v. Broadlands Community Con. School Dist.*, 348 Ill. App. 567, 109 N.E.2d 636 (1952); *Flowers v. Board of Commissioners*, 240 Ind. 668, 168 N.E.2d 224 (1960); *Schoening v. U.S. Aviation Underwriters, Inc.*, 265 Minn. 119, 120 N.W.2d 859 (1963); and *Shermoen v. Lindsay*, 163 N.W.2d 738 (N.D. 1968).

9. *Parish, supra* note 1; *Muskopf, supra* note 1; *Hargrove, supra*, note 1; *Smith, supra* note 1; *Molitor, supra* note 1; *Perkins, supra* note 6; and dissenting opinion of Frantz, J., in *Tesone v. School District*, 152 Colo. 596, 384 P.2d 82 (1963).

territory of Colorado declared that the common law of England, so far as the same is applicable and of a general nature, should be the rule of decision in this state. It has been previously argued that the doctrines of immunity were not a part of the common law.[10] Furthermore, the manner of the establishment of the doctrines in Colorado demonstrates to us that they were constructed on a not too substantial foundation. The first Colorado case to establish governmental immunity was *County Commissioners v. Bish*, 18 Colo. 474, 33 P. 184 (1893). The first Colorado case to declare sovereign immunity of the state was *In Re Constitutionality of Substitute for Senate Bill No. 83*, 21 Colo. 69, 39 P. 1088 (1895). We mention somewhat parenthetically that in some of the briefs it is stated or assumed that *Bish* was the first case on the subject of governmental immunity. We note, however, that the doctrine was somewhat of a stranger in the minds of the justices of this court prior to 1893.[11]

In *Bish* the rule of governmental immunity was declared in the following language:

"The rule that counties are not liable for torts, in the absence of statute, is universally acknowledged. And the great weight of authority is in favor of the conclusion that, even when a duty is imposed by statute, the county is not liable for failure to perform it, in the absence of express provision, creating such liability. The cases sustaining the latter conclusion are so numerous that space will not permit of their citation in this opinion. They will be found collated in part in the notes on page 364 of the fourth volume of the American and English Encyclopedia of Law, and also in note 1, page 303 of Cooley's Constitutional Limitations."

---

10. *See* footnote 2.

11. *Salida v. McKinna*, 16 Colo. 523, 27 P. 810 (1891); *Denver v. Williams*, 12 Colo. 475, 21 P. 617 (1889); *Denver v. Dean*, 10 Colo. 375, 16 P. 30 (1887); *Denver v. Rhodes*, 9 Colo. 554, 13 P. 729 (1886); *Denver v. Dunsmore*, 7 Colo. 328, 3 P. 705 (1884); and *Denver v. Capelli*, 4 Colo. 25, 34 Am. R. 62 (1877). *See* also *Daniels v. Denver*, 2 Colo. 669 (1875), which seems not to have met the issue.

In Justice Hall's dissent to *Liber v. Flor,* 143 Colo. 205, 353 P.2d 590 (1960), he pointed out a distinct lack of favorable impression from reading the cases collated on page 364 of the fourth volume of American and English Encyclopedia of Law. He noted that "the court [in *Bish*] made no effort at analysis of the problem presented in light of the constitution or reason."

In the case of *Constitutionality of Substitute* not even questionable authority was cited. All of the comments regarding sovereign immunity in that opinion are as follows:

"After as careful and full an investigation as we have been able to give, we answer that none of the provisions of the constitution referred to will be violated by the enactment into law of the bill in question. We recognize the doctrine that, without constitutional or legislative authority, the state in its sovereign capacity cannot be sued. No such authority exists in this state. This being so, no liability upon contract or tort, if any there be, can be enforced against the state in any of its courts."

It might be said that in *Bish* and *Constitutionality of Substitute* the doctrines were pulled out of rather thin air. These two cases constitute the foundation, and the bricks of the doctrinal wall were laid upon them. *Pitkin County v. Ball,* 22 Colo. 125, 43 P. 1000 (1896), was the next case on governmental immunity. Two texts were cited but the only case upon which the opinion was predicated was *Bish.* Then came *Commissioners v. Adler,* 69 Colo. 290, 194 P. 621 (1920), where *Bish* was the only case cited on governmental immunity. In *Richardson v. Belknap,* 73 Colo. 52, 213 P. 335 (1923), *Bish* was the only case cited on the issue. In *Lumber Company v. School District,* 83 Colo. 272, 263 P. 723 (1928), the cases cited were *Bish, Richardson,* and *Florman v. School District,* 6 Colo. App. 319, 40 P. 469 (1895). In *Florman* the court held that the school district could not be garnisheed, but the money could be reached in equity. The only cases cited on governmental immunity in *School District v.*

*Denver Pressed Brick Co.,* 91 Colo. 288, 14 P.2d 487 (1932), were from those just listed. The list of cases sustaining governmental immunity continues in the same theme, *i.e.,* always predicated upon earlier cases with *Bish* as the foundation.

In the field of sovereign immunity of the State, *Parry v. Board of Corrections,* 93 Colo. 589, 28 P.2d 251 (1933), cited Ruling Case Law and Corpus Juris, but the only case mentioned was *Constitutionality of Substitute.* In *D. & R. G. W. R. R. Co. v. Castle Rock,* 99 Colo. 340, 62 P.2d 1164 (1936), it was held that the State could not be sued as trustee for the State School Fund. Not a single authority was cited. Then came *State v. Colorado Co.,* 104 Colo. 436, 91 P.2d 481 (1939), which cited solely *Constitutionality of Substitute, Parry, Castle Rock, Bish,* and *Board of Comr's v. Adler,* 69 Colo. 290, 194 P. 621 (1920), another of the *Bish* progeny. Next were *Faber v. State,* 143 Colo. 240, 353 P.2d 609 (1960), and *Berger v. Department of Highways,* 143 Colo. 246, 353 P.2d 612 (1960). The sovereign immunity in *Faber* was predicated upon *Denver v. Madison,* 142 Colo. 1, 351 P.2d 826 (1960), another descendant of *Bish. Berger* was based solely on *Faber.* The last opinion of this court on sovereign immunity coming to our attention is *Colorado v. Morison,* 148 Colo. 79, 365 P.2d 266 (1961). It was predicated upon *Liber v. Flor, Berger, Faber, Constitutionality of Substitute,* and *Board of County Commissioners v. Colorado Springs,* 66 Colo. 111, 180 P. 301 (1919). Why the last case was cited is a mystery as it ruled that the city could sue the county. We think that *Constitutionality of Substitute* and *Bish,* the two cornerstones of sovereign and governmental immunity in Colorado, were wrong when announced and they are wrong today; repetition of them forty times or four hundred times doesn't make good law or cause the reasons for the doctrines to become any stronger. In any event, if the doctrines were not wrong when some or all of these decisions were written, they are now.

In departing from these inequitable and untenable doctrines we are not in the vanguard. We have been preceded in varying degrees by the appellate courts of Arizona, Arkansas, California, Florida, Idaho, Illinois, Indiana, Kansas, Kentucky, Michigan, Minnesota, Nebraska, Nevada, New Jersey, Rhode Island and Wisconsin.[12]

The effect of this opinion and its two contemporaries is simply to undo what this court has done and leave the situation where it should have been at the beginning, or at least should be now: in the hands of the General Assembly of the State of Colorado. If the General Assembly wishes to restore sovereign immunity and governmental immunity in whole or in part, it has the authority to do so. *Brown v. Omaha,* 183 Neb. 430, 160 N.W.2d 805 (1968); and *Holytz v. Milwaukee,* 17 Wis. 2d 26, 115 N.W.2d 618 (1962). If the legislative arm of our government does not completely restore these immunities, then undoubtedly it will wish to place limitations upon the actions that may be brought against the state and its subdivisions. This, too, it has full authority to accomplish. *Smith v. State,* 93 Idaho 795, 473 P.2d 937 (1970); *Mills v. County of Winnebago,* 104 Ill. App. 2d 366, 244 N.E.2d 65 (1969); *Spanel v. Mounds View School District,* 264 Minn. 279, 118 N.W.2d 795 (1962); *Brown, supra; Becker v. Beaudoin,* 562 R.I. 106, 261 A.2d 896 (1970); and *Holytz, supra.*

We are not unmindful that to give the rule of this opinion immediate effect would constitute a disservice to governmental entities which will not be able

12. *Stone, supra* note 1; *Parish, supra* note 1; *Muskopf, supra* note 1; *Hargrove, supra* note 1; *Smith, supra* note 1; *Molitor, supra* note 1; *Perkins, supra* note 6; *Carroll v. Kittle,* 203 Kan. 841, 457 P.2d 21 (1969); *Haney, supra* note 1; *Myers v. Genessee County Auditor,* 375 Mich. 1, 133 N.W.2d 190 (1965), and *Williams v. Detroit,* 364 Mich. 231, 111 N.W.2d 1 (1961); *Spanel, supra* note 1; *Johnson v. Municipal University,* 184 Neb. 512, 169 N.W.2d 286 (1969), and *Brown v. Omaha,* 183 Neb. 430, 160 N.W.2d 805 (1968); *Walsh v. Clark County School District,* 82 Nev. 414, 419 P.2d 775 (1966), and *Rice v. Clark County,* 79 Nev. 253, 382 P.2d 605 (1963); *Willis v. Department of Conservation,* 55 N.J. 534, 264 A.2d 34 (1970), and *McAndrew, supra* note 6; *Becker v. Beaudoin,* 562 R.I. 106, 261 A.2d 896 (1970); and *Holytz, supra* note 1.

to include in their budgets premiums for liability insurance coverage until a future time. Except as to the parties in this proceeding and in the two contemporaneous proceedings the ruling here shall be prospective only and shall be effective only as to causes of action arising after June 30, 1972. We recognize the unfairness of permitting possible recoveries in these three cases and not in any cases that may now be pending. After considering the alternatives, this result seems to us less unfair than any other.

The judgment is reversed and the cause remanded with directions to reinstate the complaint and proceed.

MR. JUSTICE DAY and MR. JUSTICE KELLEY dissenting.

MR. JUSTICE DAY dissenting:

I dissent.

As the only member now presently sitting on the court, who participated in the majority decisions of the court on this issue in the last 14 years and who was the author of at least one of the opinions, I have no need to set forth my views at length. They are contained in the 85-year history of the court's action on this problem.

I am not so concerned with the individual respective cases announced this date by the majority. The "Do Not Open Until After Christmas" package is a hollow pinata unless the legislature creates the machinery and appropriates the money to provide for payment of insurance premiums or for the payment of a judgment. I predict the legislature may do so in some cases and not in others as it has already done in the case of a school district. 1965 Perm. Supp., C.R.S. 1963, 123-30-11.

The majority agrees the whole question of state liability is a legislative problem. Actually, that is what this court has said in the cases overruled this date. That the legislature has been slow to act is understandable. The financial impact is not readily ascertainable. Government touches the lives of all of its citizens far more than any corpora-

tion, even the largest. The bill must be paid by even the litigant who will divvy up his proportionate share, along with his neighbors, of the taxes required. This is a political consideration which the legislature must determine. How much they are willing to pay and for what types of liability will be determined there.

I do have concern for the disdain the majority has shown for the doctrine of *stare decisis*. I have sat with 15 men on this court so I can attest to the fact that they are all mortal and that those who are here today also will some day leave the court. Then when other changes in the personnel come about, perhaps we will see an overthrow of the case law which this court as presently constituted has pronounced — *ad infinitum*.

Only last week this court announced in *Breternitz v. Arvada*, 174 Colo. 56, 482 P.2d 955, that the change in the personnel make-up of a city council does not affect that body as a continuing one. I was under the impression that the Supreme Court was a continuing entity. If it is to make a new start when the personnel of the court changes, there can be little confidence in the pronouncements of this court today or any day.

Mr. Justice Kelley dissenting:

I do not quarrel with my brethern as to the power of the court to overrule the doctrine of sovereign immunity — only their wisdom.

Regardless of whether the courts erred in adopting the doctrine, it has been the law of this state since its beginning. *Liber v. Flor,* 143 Colo. 205, 353 P.2d 590, and cases cited therein. This does not necessarily mean that it is a fair and just doctrine.

The General Assembly has enacted a substantial amount of legislation based upon the assumption that sovereign and governmental immunity were firmly established as a fundamental concept in this state.

The General Assembly until 1965 recognized its unfairness on many occasions by granting permission to

private individuals to sue the state for the negligence of its employees.

In 1965 the General Assembly created the Claims Commission. 1965 Perm. Supp., C.R.S. 1963, 130-10-1, *et seq.,* Sec. 1 declared:

"This article shall not be construed as a waiver or repudiation of *the doctrine of sovereign immunity, firmly established in the law of this jurisdiction,* by the state of Colorado, or any state agency, or any of its political subdivisions, but is enacted to establish an orderly and expeditious procedure to aid the general assembly in the consideration and evaluation of tort claims against the state, some of which the state should in equity and good conscience assume and pay. No liability for any claim shall be imposed upon the state or any state agency by a determination of the Colorado claims commission under the provisions of this article unless the general assembly shall have enacted legislation making a specific appropriation for the payment of such claim." (Emphasis added.)

Sec. 4 defined the jurisdiction of the commission extending it to claims for injury to persons or property or loss of life caused by the negligent or wrongful act or omission of a state agency, or of a state employee while acting within the scope of his office or employment, with certain exceptions.

The act provided for the procedure for presenting claims, for hearings, and for the findings of fact and the report and recommendations to the General Assembly. A period within which such claims had to be filed or be forever barred was provided for.

In 1967 the legislature amended sections 4, 7, and 8. 1967 Perm. Supp., C.R.S. 1963, 130-10-4, 7, and 8.

In 1962 the General Assembly passed legislation which authorized the state, including any agency or department thereof, a county, or a city and county, to purchase insurance for the purpose of insuring its officers, employees, and agents against any liability for injuries or

damages resulting from their negligence or other tortious conduct during the course of their service or employment. C.R.S. 1963, 72-16-1, *et seq.*

Sec. 5 of this act provides:

"Nothing contained in this article shall be deemed to be a waiver of *the immunity of the state or its governmental subdivisions*, nor shall failure to procure such insurance be considered as creating any liability against the state or its governmental subdivisions." (Emphasis added.)

Further reference to other acts which have been adopted on the assumption that sovereign immunity is an established principle of the law of this state need not be cited. It is clear that the whole scheme of government has for its basic premise the concept that the state is not liable for the torts of its officers, agents and employees. However, *see* C.R.S. 1963, chapter 3, art. 2, particularly sec. 5.

According to the opinion of the court,

"The effect of this opinion and its two contemporaries is simply to undo what this court has done and leave the situation where it should have been at the beginning, or at least should be now: in the hands of the General Assembly of the State of Colorado. If the General Assembly wishes to restore sovereign immunity and governmental immunity in whole or in part, it has the authority to do so."

As I interpret that language, all of the laws now on the books, which are based on the assumption that the doctrine of sovereign immunity prevails in this state, are no longer effective — a sort of judicial repeal. I do not wish to participate in creating this confusion.

What the court has done today is not to create "judge made" law; it is judicial legislation which will undoubtedly create consternation, if not more. Perhaps as a starting point for the rebuilding job which now confronts the legislature, it may wish to consider the necessity of re-enacting C.R.S. 1963, 63-2-4.