**CITY OF COLORADO SPRINGS,
a municipal corporation,
Petitioner,**

v.

**TIMBERLANE ASSOCIATES, a Colorado general partnership; Investment Builders Corporation, a Colorado corporation; John W. Dawson; and Joseph M. Birdsell, Individually, Respondents.**

No. 90SC645.

Supreme Court of Colorado,
En Banc.

Jan. 27, 1992.

Rehearing Denied Feb. 24, 1992.

Anderson, Johnson & Gianunzio, Gregory L. Johnson, Kelly Dude, Colorado Springs, for petitioner.

Susemihl, Lohman, Kent, Carlson & McDermott, P.C., Peter M. Susemihl, Catherine Woelk–Rudisill, Colorado Springs, for respondents.

Colorado Mun. League, Kathleen E. Haddock, Denver, for amicus curiae Colorado Mun. League.

Gorsuch, Kirgis, Campbell, Walker and Grover, Joseph B. Wilson, Denver, for amicus curiae Colorado Ass'n of Mun. Utilities.

Justice VOLLACK delivered the Opinion of the Court.

The City of Colorado Springs (the City) appeals from a court of appeals ruling that statutes of limitations run against cities when they act in a proprietary capacity, such as when operating a public utility. We affirm the court of appeals result on different grounds.

I.

In September of 1975, Timberlane Associates (Timberlane) owned an apartment complex in the City of Colorado Springs. The apartment complex received its natural gas from the City. Late in 1975, a City employee changed the gas meter at the complex, replacing a five-dial meter with a new six-dial meter. Following the installation, City employees failed to correctly read the new six-dial meter. As a result, the City underbilled Timberlane for natural gas supplied from late 1975 until sometime in April of 1981.

The City discovered its billing error in or about May of 1981, and in September of that year, presented Timberlane with a bill in the amount of $57,692.79 for the previously consumed natural gas.

The City did not file suit to collect its debt until July 1, 1986, five years after its discovery of the billing error. Both parties filed motions for summary judgment. The district court initially entered an order in favor of Timberlane. The district court later found for the City, however, after the City filed a Motion for Amendment of Findings and Judgment. Concluding that the statute of limitations did not bar the action, the district court awarded the City the full

amount due, plus eight percent interest and costs. Timberlane then filed a Motion for Amended Findings or, Alternatively, Judgment Notwithstanding the Verdict. The district court denied this motion while reversing the portion of its prior ruling that awarded interest on the unpaid charges to the City.

The court of appeals reversed in *City of Colorado Springs v. Timberlane Associates*, 807 P.2d 1177 (Colo.App.1990), holding that the City was barred from collecting unpaid gas charges incurred before July 1, 1980, more than six years before the City filed suit. The court of appeals held that the applicable statute of limitations, section 13–80–110, 6A C.R.S. (1986),[1] ran against the City because it was acting in a proprietary capacity by operating a public utility. Accordingly, the City was barred from collecting any charges underbilled six years prior to the date of filing the action, specifically from late 1975 until 1980. The City was allowed, however, to collect charges underbilled from 1980 through April of 1981.

The City now contends that the court of appeals erred in holding that statutes of limitations run against governmental entities when the governmental action underlying the suit can be characterized as proprietary or private, as opposed to governmental or public. The City argues that Colorado courts have never distinguished between governmental functions when ascertaining whether statutes of limitations are tolled. Further, because such a distinction is unduly difficult to apply, the City argues that the distinction should be rejected. The City urges this court to apply the general rule that statutes of limitations apply only where the General Assembly has expressly authorized, or where necessary by statutory implication.

## II.

The City's appeal presents the larger question of when statutes of limitations run against local governments. We agree with the City's contention that whether a local government acts in a proprietary capacity or governmental capacity is not a viable means by which to determine the running of limitations. We have noted that such a function distinction does not lend itself to predictable patterns in characterizing local government action. *City and County of Denver v. Mountain States Tel. and Tel. Co.*, 754 P.2d 1172 (Colo.1988). We recognize that in keeping with the General Assembly's abrogation of sovereign immunity, we can no longer cloak the state's political subdivisions in immunity from the running of statutes of limitations. *See Evans v. Board of County Comm'rs*, 174 Colo. 97, 482 P.2d 968 (1971).[2] We agree with the New Jersey Supreme Court's observation that sovereigns now subject to suit should be required to bring their own in a timely manner. *New Jersey Educ. Facilities Auth. v. Gruzen Partnership*, 125 N.J. 66, 592 A.2d 559, 561 (1991). We thus reject the common law immunity and conclude that statutes of limitations run against local governments, except where the General Assembly expressly authorizes otherwise. Because we are departing from the prior course of law in this area, we begin our analysis with a general review of immunity from statutes of limitations.

## III.

The origin of governmental immunity from statutes of limitations is found in the English common law rule of *"nullum tempus occurrit regi,"* or, "time does not run against the king."[3] Labelled the royal prerogative, the rule protected the king when

---

**1.** Section 13–80–110(1), 6 C.R.S. (1973), provides that "the following actions shall be commenced within six years after the cause of action accrues, and not afterwards: (a) All actions of debt founded upon any contract or liability in action."

**2.** Superseded by statute as stated in *State v. Hartsough*, 790 P.2d 836 (Colo.1990).

**3.** *Black's Law Dictionary* 1069 (6th ed. 1990); *see Guaranty Trust Co. v. United States*, 304 U.S. 126, 132, 58 S.Ct. 785, 788, 82 L.Ed. 1224 (1937); *United States v. Thompson*, 98 U.S. 486, 489, 25 L.Ed. 194 (1878); *United States v. Hoar*, 26 F.Cas. 329, 330 (C.C.D.Mass.1821) (No. 15,373).

he brought suit in the posture of a plaintiff. *United States v. Thompson*, 98 U.S. 486, 489, 25 L.Ed. 194 (1878); *United States v. Hoar*, 26 F.Cas. 329, 330 (C.C.D.Mass.1821) (No. 15,373). No defense of limitations or laches could defeat an action brought by the king.

Justice Story articulated the rationale behind the common law *nullum tempus* rule, as follows:

> The true reason, indeed, why the law has determined, that there can be no negligence or laches imputed to the crown, and, therefore, no delay should bar its right, though sometimes asserted to be, because the king is always busied for the public good, and, therefore, has not leisure to assert his right within the times limited to subjects (1 Bl. Comm. 247), is to be found in the great public policy of preserving the public rights, revenues, and property from injury and loss, by the negligence of public officers. And though this is sometimes called a prerogative right, it is in fact nothing more than a reservation, or exception, introduced for the public benefit, and equally applicable to all governments.

*Hoar*, 26 F.Cas. at 330. The rule prevented the public from suffering from the negligence of the king's servants. *Thompson*, 98 U.S. at 489.

The *nullum tempus* doctrine was imparted to the colonies as an incident of sovereignty when the colonies achieved their independence. *Id.; see New Jersey Educ. Facilities Auth. v. Conditioning Co.*, 237 N.J.Super. 310, 567 A.2d 1013, 1016 (1989) (noting that doctrine was incorporated into American law after the colonial period), *aff'd in part and rev'd in part, New Jersey Educ. Facilities v. Gruzen Partnership*, 125 N.J. 66, 592 A.2d 559 (1991); *see also Commonwealth v. Owens–Corning Fiberglas Co.*, 238 Va. 595, 385 S.E.2d 865, 870 (1989) (Poff, S.J., dissenting) (noting that the statute exempting the Commonwealth from limitations "has a his-

tory of more than 200 years, beginning soon after the revolution ... by the act of October, 1778").

Many of the several states continued to follow the *nullum tempus* doctrine, subjecting themselves to limitations where the legislature has made an express declaration, or where it is necessary by implication. *Hoar*, 26 F.Cas. at 330; *cf. New Jersey Educ. Facilities Auth.*, 567 A.2d at 1016 ("A majority of American jurisdictions follow the doctrine in its traditional version."). Thus, a majority of states, when filing lawsuits in the posture of plaintiffs, are immune from statutes of limitations, except where their respective legislatures have decided otherwise.

The contemporary *nullum tempus* doctrine is grounded not on notions of royal privilege, but on considerations of public policy. *Guaranty Trust Co. v. United States*, 304 U.S. 126, 132, 58 S.Ct. 785, 788, 82 L.Ed. 1224 (1937) ("[T]he source of its continuing vitality where the royal privilege no longer exists is to be found in the public policy ... of preserving the public rights, revenues, and property from injury and loss, by the negligence of public officers.").

### A. Application of the *Nullum Tempus* Doctrine to Local Governments

While its application to the several states is well settled, the *nullum tempus* doctrine has not been uniformly applied to their political subdivisions. *Cf. Northampton County Area Community College v. Dow Chem., U.S.A.*, — Pa. —, 598 A.2d 1288 (1991) (Papadakos, J., dissenting) (analyzing which local authorities can invoke the *nullum tempus* doctrine). Some jurisdictions fully shield their political subdivisions from limitations on actions under the *nullum tempus* doctrine, while a minority of jurisdictions have declined to extend the *nullum tempus* doctrine to local government.[4]

---

4. *E.g., Enroth v. Memorial Hosp. at Gulfport*, 566 So.2d 202, 206 (Miss.1990) (statutes of limitations do not run against the state or any subdivision, including municipal corporations); *City of Medford v. Budge–McHugh Supply Co.*, 91 Or. App. 213, 754 P.2d 607 (1988) (statutes of limitations do not run against government bodies unless they expressly apply or apply by necessary implication). *But see Washington Pub. Power Supply Sys. v. General Elec. Co.*, 113

A majority of jurisdictions, however, provide local governments with limited immunity from statutes of limitations, premised on the notion that political subdivisions do not possess the full attributes of sovereignty held by the states.[5] In these jurisdictions, limited immunity turns on whether the local government is acting in a public or governmental capacity, as opposed to a corporate or private capacity.[6]

The distinction in the local governments' actions is justified by local governments' dual nature. Eugene McQuillin, *Municipal Corporations* [hereinafter *Municipal Corporations*] § 2.09 (3d ed. 1987). Un-like the several states, municipalities have long been recognized as both governmental entities and as corporations. Generally, where a municipality acts in a corporate capacity, it is no different than a private citizen. Where a municipality's actions mimic those of a sovereign state, however, the municipality may be viewed as an extension of the sovereign, or as acting on its behalf. *Municipal Corporations* § 2.08a. The local government will be viewed as seeking to protect public rights, and limitations will not run because public rights stand paramount and should not suffer, no matter how lax or negligent a local govern-

Wash.2d 288, 778 P.2d 1047, 1049 (1989) (limitations run against municipalities unless actions arose out of exercise of powers traceable to the state's sovereign powers); *San Marcos Water Dist. v. San Marcos Unified Sch. Dist.*, 190 Cal. App.3d 1083, 235 Cal.Rptr. 827, 830 (1987) (the common law rule of immunity from statutes of limitation does not generally apply to local government agencies such as municipalities); *Board of Educ., Sch. Dist. 16 v. Standhardt*, 80 N.M. 543, 458 P.2d 795, 801 (1969) (statutes run against counties and other political subdivisions of the state unless action is in reality one for the state); *Lakeville Township v. Northwestern Trust Co.*, 74 N.D. 396, 22 N.W.2d 591, 592 (1946) (townships are bodies corporate and are therefore amenable to statutes of limitations); *Guaranty Trust Co. v. United States*, 304 U.S. at 135 n. 3, 58 S.Ct. at 790 n. 3 (the *nullum tempus* rule has never been extended to agencies of a sovereign, such as municipalities).

5. *E.g.*, *Washington Pub. Power Supply Sys.*, 778 P.2d at 1051 (municipalities are only protected from limitations on actions when they bring actions which arise out of the exercise of powers traceable to the state's sovereign powers); *Anne Arundel County v. McCormick*, 323 Md. 688, 594 A.2d 1138, 1141 (1991) (the *nullum tempus* doctrine has more limited effect when the plaintiff is not the state, but one of the state's political subdivisions); *Oklahoma City Mun. Improvement Auth. v. HTB, Inc.*, 769 P.2d 131, 138 (Okla.1988) (Opala, J., dissenting) (political subdivisions possess none of the attributes of true sovereignty) (citing *Metropolitan R.R. Co. v. District of Columbia*, 132 U.S. 1, 10 S.Ct. 19, 33 L.Ed. 231 (1889)); and, *District of Columbia v. Owens–Corning Fiberglas*, 572 A.2d 394, 402 (D.C.1989) (concluding that immunity from limitations is not claimed as a sovereign or quasi-sovereign privilege), *cert. denied*, ––– U.S. ––––, 111 S.Ct. 213, 112 L.Ed.2d 173 (1990). The United States Supreme Court has also said that "[p]olitical subdivisions of States—counties, cities or whatever—never were and never have been considered as sovereign entities. Rather, they have been traditionally regarded as subordinate governmental instrumentalities created by the State to assist in the carrying out of state governmental functions." *Reynolds v. Sims*, 377 U.S. 533, 575, 84 S.Ct. 1362, 1388, 12 L.Ed.2d 506 (1964).

6. *E.g.*, *Laramie County Sch. Dist. Number One v. Muir*, 808 P.2d 797, 801 (Wyo.1991) (statutes of limitations do not run against local agencies if public rights are being protected); *Anne Arundel County*, 594 A.2d at 1141–42 (counties and municipalities can only avoid statutes of limitations if the exercise of a governmental right is at issue); *School Dist. of Aliquippa v. Maryland Casualty Co.*, 402 Pa.Super. 569, 587 A.2d 765, 771–72 (1991) (statutes of limitations run against municipalities unless the cause of action accrued in the governmental capacity); *Oklahoma City Mun. Improvement Auth.*, 769 P.2d at 133; *District of Columbia*, 572 A.2d at 403–04 ("a circumscribed municipal immunity in the performance of public functions is today the rule in an overwhelming majority of states, and we recognize its authority here" (citations omitted)); *Board of Educ. v. Dow Chem. Co.*, 40 Conn.Sup. 141, 482 A.2d 1226, 1228 (1984) (municipalities receive limited immunity from statutes of limitations when performing government and not proprietary duties); *City of Shelbyville v. Shelbyville Restorium, Inc.*, 96 Ill.2d 457, 71 Ill.Dec. 720, 722–23, 451 N.E.2d 874, 876–77 (1983) (statutes of limitations will not run against plaintiff governmental units seeking to protect public rights); *Lewis Cox and Son, Inc. v. High Plains Underground Water Conservation Dist.*, 538 S.W.2d 659, 662 (Tx.Civ.App. 1976) (an exception to government agencies' immunity from limitations has been engrafted where agencies engage in proprietary functions), *rejected by City of El Paso v. Del Norte Golf and Country Club*, 614 S.W.2d 168 (Tx.Civ. App.1990). *See also* Eugene McQuillin, *Municipal Corporations* § 49.06 (3d ed. 1987).

ment may be in asserting them.[7]

### B. Rejection of the *Nullum Tempus* Doctrine

At least one jurisdiction has rejected the *nullum tempus* doctrine as applied to both the state and its agencies, based on its relationship to sovereign immunity. *New Jersey Educ. Facilities Auth. v. Gruzen Partnership*, 125 N.J. 66, 592 A.2d 559 (1991).[8] The New Jersey Supreme Court rejected the doctrine after finding that "nullum tempus is but an aspect of sovereign immunity ... [and] the doctrine of sovereign or governmental immunity, in the areas of the State's tort and contract liability, does not accord with notions of fundamental justice applicable to our elected representative form of government." *Id.* 592 A.2d at 561.

The New Jersey Supreme Court noted that, after "[h]aving yielded the greatest aspect of sovereign immunity, immunity from any suit at all, it would be anomalous in the extreme not to conclude that the sovereign who can now be sued should not have to bring its own in a timely manner." *Id.*[9]

### IV.

This court has recognized both the *nullum tempus* doctrine and the general rule that "the government is not included in a general statute of limitations unless it is expressly or by necessary implication included." *State v. Estate of Griffith*, 130

Colo. 312, 316–17, 275 P.2d 945, 948 (1954) (quoting *State Land Bd. v. Lee*, 84 Or. 431, 165 P. 372 (1917)); *see People v. Miller*, 90 Colo. 269, 8 P.2d 269 (1932). This court found sound reason for the rule "in the fact that as a matter of public policy it is necessary to preserve public rights, revenues and property from injury and loss by the negligence of public officers." *Id.*

Colorado courts have continued to follow the *nullum tempus* doctrine. *E.g., Berkeley Metro. Dist. v. Poland*, 705 P.2d 1004, 1007 (Colo.App.1985) (statute of limitations did not bar action by water and sanitation district where there was no specific provision and it was not necessary by implication); *Hinshaw v. Department of Welfare*, 157 Colo. 447, 452, 403 P.2d 206, 208 (1965) (the *nullum tempus* doctrine applies to the sovereign power and the several states will not be bound without express words). In following the *nullum tempus* doctrine, the court of appeals extended its application to public entities generally by stating that "[a] statute of limitations does not run against a public entity unless the statute specifically so provides or unless it does so by necessary implication." *Berkeley Metro. Dist.*, 705 P.2d at 1007 (citations omitted). This court has never addressed whether the *nullum tempus* doctrine applies to local governments.

We are called on to examine the *nullum tempus* doctrine and its application to governmental entities other than the state.

---

7. *E.g., Laramie County Sch. Dist. Number One*, 808 P.2d at 801; *Oklahoma Mun. Improvement Auth.*, 769 P.2d at 133; *Board of Educ. of the City of Chicago v. A, C and S, Inc.*, 131 Ill.2d 428, 137 Ill.Dec. 635, 655–56, 546 N.E.2d 580 at 600–01 (1989); *Commonwealth Dep't of Transp. v. J.W. Bishop & Co.*, 497 Pa. 58, 439 A.2d 101 at 104 (1981); *District of Columbia*, 572 A.2d at 401; *City of Shelbyville*, 451 N.E.2d at 876, 71 Ill.Dec. at 722.

8. The New Jersey Educational Facilities Authority brought an action to recover damages for defective design and construction of a student-center building. 592 A.2d at 560.

9. Prior to the New Jersey Supreme Court's holding in *New Jersey Educ. Facilities Auth.*, Justice Clark of the Illinois Supreme Court dissented to a majority opinion which held that the abolition of sovereign immunity did not mandate the

abolition of immunity from statutes of limitations. *City of Shelbyville*, 451 N.E.2d at 875–76, 71 Ill.Dec. at 721–22. Justice Clark disagreed, noting that the abolition of sovereign immunity repudiated the sovereign's preference in common law over its citizens and debunked the myth that the king can do no wrong. *Id.* at 879, 71 Ill.Dec. at 725. Justice Clark concluded:

[I]n abolishing local government's immunity from suit, the framers of the 1970 Constitution clearly intended that the sovereign and citizens be on equal footing. If the city of Shelbyville can raise the defense of improper delay against a citizen suing it, there is no legitimate reason why a citizen being sued by the city of Shelbyville should not be able to raise the same defense.

*Id.*

We are no longer convinced that the need to protect public rights from the negligence of public officers justifies local government immunity from statutes of limitations. We find no validity in the doctrine premised on a function distinction test. Rather, we find that the principles supporting abrogation of sovereign immunity from liability, and principles supporting statutes of limitations, mandate abrogation of immunity from limitations as applied to political subdivisions of the state, unless the General Assembly sees fit to do otherwise.

## A. The Local Government Function Distinction

Limited immunity stemming from the need to protect public rights is premised, in some jurisdictions, on a determination of whether the local government is acting in a public or governmental capacity or whether it is asserting a public right or a private right. *E.g., City of Shelbyville v. Shelbyville Restorium, Inc.,* 96 Ill.2d 457, 71 Ill. Dec. 720, 722–23, 451 N.E.2d 874, 876–77 (1983) ("[T]he practice in Illinois has been to determine whether the right which the plaintiff governmental unit seeks to assert is in fact a right belonging to the general public or whether it belongs only to the government...."). *See* discussion *supra* part III.A.; *Oklahoma City Mun. Improvement Auth. v. HTB, Inc.,* 769 P.2d 131, 134 (Okla.1988) ("[W]e must determine whether plaintiffs below acted in a sovereign capacity, and whether the rights at

issue rise to the level of public rights."). The inquiries are intertwined insofar as a local government by definition will be acting in a public or governmental capacity when seeking to assert public or governmental rights.

This court has never used a function distinction test, * however, to ascertain whether a statute of limitations runs against a local government. We decline to do so now because such a test is fraught with inconsistencies in its application. *See City and County of Denver v. Mountain States Tel. and Tel. Co.,* 754 P.2d 1172, 1173–76 (Colo.1988) ("Cases and commentators have criticized the governmental/proprietary distinction as unhelpful, inherently unsound, and 'probably one of the most unsatisfactory known to the law....' ").[10] Since we reject the function distinction test that gives rise to limited immunity, we are constrained to either grant local governments full immunity from limitations or hold them accountable to statutes of limitations. Given our abrogation of sovereign immunity and the purposes served by limitations on actions, we find the latter course more appropriate.

## B. Sovereign Immunity from Liability

Many jurisdictions have struggled to distinguish the *nullum tempus* doctrine from sovereign immunity from liability, in order to retain the former in light of abrogation of the latter.[11] The Pennsylvania Supreme

---

**10.** In *Mountain States Tel. and Tel.,* we thoroughly reviewed the current status of the municipal function test and rejected its use in the utilities relocation context. *Mountain States Tel. and Tel. Co.,* 754 P.2d at 1176. Since our decision, the test has continued to receive criticism in other jurisdictions. *See Northampton County Area Community College v. Dow Chem., U.S.A.,* 389 Pa.Super. 11, 566 A.2d 591, 597 (1989) (municipal function test is obsolete); *Anne Arundel County v. McCormick,* 323 Md. 688, 594 A.2d 1138, 1142 (1991) (the distinction between governmental and proprietary functions is sometimes illusory in practice); Janice C. Griffith, *Local Government Contracts: Escaping from the Governmental/Proprietary Maze,* 75 Iowa L.Rev. 277, 318–28 (1990) (despite the venerability of the governmental/proprietary test, the test is fatally flawed and should be rejected).

**11.** *E.g. District of Columbia v. Owens–Corning Fiberglas,* 572 A.2d 394, 401 (D.C.1989) (a more plausible justification for the *nullum tempus* doctrine was needed, as the legislatures and courts limited the sovereigns' immunity from suit); *Northampton County Area Community College,* 566 A.2d at 595 (discussing *Commonwealth Dep't of Transp. v. J.W. Bishop & Co.,* 497 Pa. 58, 439 A.2d 101 (1981), noting that the court concluded that immunity from limitations was still viable in light of abrogation of sovereign immunity); *Oklahoma City Mun. Improvement Auth.,* 769 P.2d at 134 (function test which applies to sovereign immunity from suit is not to be equated with immunity from limitations); and *City of Shelbyville,* 451 N.E.2d at 875–76, 71 Ill.Dec. at 721–22 (abolition of immunity from liability does not require abolition of immunity from limitations). *But see Anne Arundel County,* 594 A.2d at 1141 (recognizing that the municipal function test is used to determine both

Court, for example, noted that both doctrines have their "roots in the prerogative of the Crown." *Commonwealth Dep't of Transp. v. J.W. Bishop & Co.*, 497 Pa. 58, 439 A.2d 101, 103 (1981). The court distinguished the two doctrines, however, on the grounds that when the Commonwealth invokes the doctrine of *nullum tempus*, it seeks "as a plaintiff to protect public rights and public property." *Id.* 439 A.2d at 104. When the Commonwealth invokes immunity from liability, "it seeks to deny those whom it has allegedly wronged the opportunity to obtain relief." *Id.* Immunity from liability, the court noted, "has been defended on the theory that without it the courts would be overburdened and the Commonwealth financially imperiled. It has never been justified on the basis of the need to protect public rights." *Id.*

The Illinois Supreme Court has observed that "American courts in this century have viewed both doctrines as embodying a policy of protecting the public purse rather than perpetuating philosophical notions of sovereign power." *City of Shelbyville*, 451 N.E.2d at 876, 71 Ill.Dec. at 722. The court discarded immunity from liability, however, and retained immunity from statutes of limitations on the grounds that modern law supported immunity from limitations as it protects the public from state officers' negligence in asserting public causes of action. *Id.*

We have not previously evaluated the underpinnings of sovereign immunity with an eye to immunity from statutes of limitations. In *Evans v. Board of County Commissioners*, 174 Colo. 97, 482 P.2d 968 (1971), we abrogated the State of Colorado's immunity from suit, and acknowledged the General Assembly's authority to restore immunity as it saw fit. *Id.* at 105, 482 P.2d at 972.

While noting that there was ample authority supporting sovereign immunity from liability, we chose to abrogate it because the common law philosophies justifying immunity from liability were shed when

the Revolutionary War was won. *Id.* at 100, 482 P.2d at 969. We also noted that it would be incongruous to permit suits against municipalities when engaged in proprietary functions, but not when engaged in governmental functions. *Id.* We concluded that sovereign immunity from liability was inequitable and untenable. *Id.* at 105, 482 P.2d at 972.

We find persuasive, however, the New Jersey Supreme Court's reasoning that "the doctrine of nullum tempus is but an aspect of sovereign immunity." *New Jersey Educ. Facilities Auth. v. Gruzen Partnership*, 125 N.J. 66, 592 A.2d 559, 561 (1991).[12] The New Jersey Supreme Court abolished immunity from statutes of *limitations* based on its prior holding that immunity from *liability* did not accord with notions of fundamental justice endemic to a representative form of government. *Id.* In *Evans*, we similarly concluded that sovereign immunity from liability was inequitable.

Since we do not recognize a distinction in local government functions, we cannot premise immunity on an elusive conception of protecting public versus private rights. We note that explosions in metropolitan populations have forced local governments to perform myriad, nontraditional services. *See, e.g., Municipal Corporations* § 1.52. Coupled with abrogation of sovereign immunity from liability, it would indeed be incongruous to give political subdivisions sovereign status by insulating them from statutes of limitations.

Evaluation of the rationales underlying statutes of limitations also supports our conclusion. We have held that statutes of limitations promote justice by discouraging delay and prohibiting the prosecution of stale claims. *Colorado Bd. of State Medical Examiners v. Jorgensen*, 198 Colo. 275, 279, 599 P.2d 869, 872 (1979). We agree with the observation of the Illinois Supreme Court that "[l]ong delays by the government in instituting suit, of course, cause harm to the defendant and are in the

---

whether municipalities are immune from suit and immune from running of statutes of limitations).

**12.** *See* discussion *supra* part III.A.

interest of no one." *City of Shelbyville,* 451 N.E.2d at 877, 71 Ill.Dec. at 723. We perceive no substantial benefit in tolerating official tardiness and allowing the City to prosecute its claim. Rather, we believe that the public will benefit from acquiring an ability to identify the time period in which local government claims can be brought.

## V.

We affirm the court of appeals holding that the City is not immune from the applicable statute of limitations, section 13–80–110, which states that all actions of debt founded upon any contract or liability must be commenced within six years after the cause of action accrues.