Darlene DeCORDOVA, as conservator for Kapri Nicole DeCordova, f/k/a Baby Girl Cruz, a/k/a Capri Nicole DeCordova, Plaintiff–Appellant and Cross–Appellee,

v.

STATE of Colorado, University of Colorado Health Sciences Center, University Hospitals School of Medicine, University Hospitals School of Nursing, University Hospitals School of Pharmacy, and Colorado General Hospital, Defendants–Appellees and Cross–Appellants.

No. 92CA2071.

Colorado Court of Appeals, Div. I.

Feb. 24, 1994.

Mickey W. Smith, Pueblo, for plaintiff-appellant and cross-appellee.

Cooper & Kelley, P.C., Paul D. Cooper, Barbara H. Glogiewicz, John R. Mann, Denver, for defendants-appellees and cross-appellants.

Opinion by Judge BRIGGS.

Plaintiff, Darlene DeCordova, as conservator for her minor daughter, appeals from a judgment entered following a jury trial that limited her recovery to $150,000 on a claim of negligence against defendants, State of Colorado and various public entities. Defendants cross-appeal the trial court's directed verdict, entered after presentation of all evidence, that defendants were negligent as a matter of law. We affirm.

In 1982, plaintiff's daughter was born at defendant University of Colorado Health Sciences Center. Because of a risk of neonatal infection, the attending physicians ordered that the infant receive a specified dosage of an intravenous antibiotic every twelve hours.

The prescribed antibiotic was known to be ototoxic (potentially harmful to hearing). The drug's toxicity increases with elevated and repeated dosages over time and can result in permanent hearing impairment.

Because the hospital pharmacy made an error in preparing the medication, the infant received approximately five times the prescribed dosage. Exactly how many overdoses of medication the infant received before the error was discovered was contested at trial.

In 1987, the child was diagnosed as having a moderately severe sensorineural hearing loss bilaterally. The condition worsened over the next several years.

In 1989, the child, through her mother as conservator, filed a complaint against defendants alleging that the overdose she had received was the cause of her hearing loss. Prior to trial, plaintiff made two offers of settlement which were rejected by defendants.

After the presentation of all evidence, the court ruled that, as a matter of law, the defendants were negligent and submitted to the jury the issues of causation and damages. In a special verdict for the plaintiff, the jury found that the child had incurred injuries and that defendants' negligence was a cause of those injuries, and it awarded plaintiff damages of $295,000.

The trial court entered judgment for $150,000, the maximum amount recoverable pursuant to § 24–10–114(1)(a), C.R.S. (1988 Repl.Vol. 10A) of the Governmental Immunity Act. Plaintiff then sought actual costs of $46,335.02 that had been incurred after defendants' rejection of her settlement offers. She argued that, pursuant to § 13–17–202, C.R.S. (1993 Cum.Supp.), she was entitled to the additional recovery because the judgment entered was greater than her rejected offers of settlement.

The trial court concluded that while costs pursuant to § 13–17–202 were permissible as part of a judgment against the government, § 24–10–114(1)(a) limited the government's total liability to $150,000, inclusive of actual costs and interest. Because judgment had already been entered against defendants for the maximum permitted by the Governmental Immunity Act, the court denied the motion for costs. Plaintiff's appeal and defendants' cross-appeal followed.

I.

Plaintiff contends that the trial court erred in construing § 24–10–114(1)(a) as a

limitation on the recovery available under § 13–17–202. We disagree.

The Colorado Governmental Immunity Act, § 24–10–101, et seq., C.R.S. (1993 Cum. Supp.) was enacted in 1971 in response to the Colorado Supreme Court's abrogation of sovereign immunity in *Evans v. Board of County Commissioners,* 174 Colo. 97, 482 P.2d 968 (1971). In that act, the General Assembly reinstated immunity from tort liability for public entities in some circumstances and in others established recovery limits, declaring that "unlimited liability could disrupt or make prohibitively expensive the provision of ... essential public services and functions." Section 24–10–102, C.R.S. (1988 Repl.Vol. 10A).

The limitation in question, § 24–10–114(1)(a), provides:

(1) The maximum amount that may be *recovered* under this article in any single occurrence, whether from one or more public entities and public employees, shall be:

(a) For any injury to one person in any single occurrence, the sum of one hundred and fifty thousand dollars. (emphasis added)

Section 13–17–202 was enacted in 1990 in response to the General Assembly's perceived need to expand the availability of cost recovery in civil cases in order to discourage the filing of unnecessary litigation and encourage the timely resolution of disputes. *See* Colo.Sess.Laws 1990, ch. 100 at 848. Section 13–17–202 reads in pertinent part:

(1)(a) Notwithstanding any other statute to the contrary, in any civil action of any nature commenced or appealed in any court of record in this state:

(I) If the plaintiff makes an offer of settlement which is rejected by the defendant and the plaintiff recovers a final judgment in excess of the amount offered, then the plaintiff shall be *awarded* actual costs accruing after the offer of settlement to be paid by the defendant. (emphasis added)

Plaintiff contends that the language in § 13–17–202, "notwithstanding any other statute to the contrary," should be interpreted as meaning "in spite of any other statute to the contrary." Thus, to the extent that any other statute is in conflict, including § 24–10–102, she argues that § 13–17–202 should prevail. However, even if we were to agree with plaintiff's construction of § 13–17–202, we conclude there is no irreconcilable conflict between it and § 24–10–114(1).

Our primary task in interpreting statutes is to provide a construction that will render the enactments effective in accomplishing the purposes for which they were adopted. *See Civil Service Commission v. Pinder,* 812 P.2d 645 (Colo.1991). When it appears that statutes may conflict, we are obligated to construe the statutes in harmony in order to give effect to each. *See L.D.G. v. E.R.,* 723 P.2d 746 (Colo.App.1986).

In *Lee v. Colorado Department of Health,* 718 P.2d 221 (Colo.1986), the trial court had applied § 24–10–114(1) to limit the judgment entered against a public entity to $150,000, but then added accrued interest to the judgment. Because costs and interest vary from case to case, our supreme court concluded that this variability was incompatible with fiscal certainty, one of the basic objectives of the Governmental Immunity Act. It therefore reversed the award of interest:

Although costs and interest may be included in any judgment entered against a public entity pursuant to the Governmental Immunity Act ... the total amount of the judgment, inclusive of interest and costs, must not exceed the recovery limitations imposed by section 24–10–114(1).

*Lee v. Colorado Department of Health, supra,* at 229; *see also State v. DeFoor,* 824 P.2d 783 (Colo.1992).

Plaintiff's reconciliation of §§ 13–17–202 and 24–10–114(1) would be equally incompatible with fiscal certainty. In contrast, we do not find the limitations contained in § 24–10–114(1) incompatible with the right to an award of costs pursuant to § 13–17–202. Nothing in the Governmental Immunity Act prohibits the "awarding" of actual costs to a plaintiff pursuant to § 13–17–202. Rather, § 24–10–114(1)(a) places a limit on the total "recovery" that a single plaintiff may receive from the government. Because this gives effect to both provisions, there is no irrecon-

cilable conflict. *See Moran v. Carlstrom,* 775 P.2d 1176 (Colo.1989) (statutes conflict when it would not be possible to give effect to both); *Alpert Corp. v. State Department of Highways,* 199 Colo. 4, 603 P.2d 944 (1979) (a statute construed to limit another is not in conflict with the other).

For example, had the jury returned a verdict for $100,000, plaintiff would have been entitled to "recover" from the government the full amount of damages and all the actual costs "awarded." If the jury had returned a verdict for $125,000, plaintiff would have been entitled to "recover" the full amount of damages and $25,000 of the actual costs "awarded."

■ We conclude that a plaintiff may recover from the government, in addition to an award for damages, actual costs pursuant to § 13–17–202, but only to the extent that the total recovery does not exceed the limitations provided in § 24–10–114(1)(a). *Cf. Lee v. Colorado Department of Health, supra.* The trial court therefore did not err in limiting plaintiff's recovery to $150,000.

## II.

■ Defendants on cross-appeal assert that it was reversible error for the trial court to enter a directed verdict finding that, as a matter of law, they were negligent. We disagree.

It is not contested that the hospital pharmacy made an error in filling the prescription. As a result, the child received at least one overdose of approximately five times the level of medication ordered by the physicians.

Plaintiff presented evidence, through an expert on acceptable standards of pharmacy practice, that the pharmacist is responsible for accurately filling a prescription and for ensuring that the dosage corresponds reasonably to the dosage range for a given patient. The expert further testified that the error committed here was avoidable and fell below minimal acceptable standards of pharmacy practice.

Defendants did not present any witness to controvert plaintiff's expert. Nor did they offer any evidence that would establish either a lower standard of care or that the conduct in question was within the applicable standard of care.

After the presentation of all evidence, the trial court granted plaintiff's motion for a directed verdict on the single issue of negligence. We find no error in this ruling.

■ If neither the evidence nor inferences deducible from it are in dispute, and the measure of the defendant's duty is clearly defined, the issue of negligence becomes a matter of law. *CeBuzz, Inc. v. Sniderman,* 171 Colo. 246, 466 P.2d 457 (1970).

No evidence exists in the record from which it can be inferred that a reasonably careful pharmacist would make the kind of error that occurred here. The undisputed evidence established that the standard of care owed by the hospital pharmacy was clearly defined and was breached. In the circumstances presented here, we cannot say that the trial court erred in directing a verdict on the single issue of negligence. *See CeBuzz, Inc. v. Sniderman, supra; McGlasson v. Barger,* 163 Colo. 438, 431 P.2d 778 (1967).

■ Defendants at trial and on appeal have argued that, because it can be predicted that a certain percentage of errors will occur in filling pharmacy orders, and because not all errors are negligent, the jury could have reasonably inferred "that the mistake made by the University's pharmacy was the type of calculation error that was due not to negligence, but rather to a statistical error rate that cannot be eliminated." The argument is disingenuous.

Some negligence in the course of human endeavors is predictable. The mere fact that a certain percentage of errors will predictably occur provides no basis to infer that an error on a particular occasion was free of negligence. *Cf. Rodriguez v. Morgan County,* 878 P.2d 77 (Colo.App.1994). To err is human. To forgive divine. To be responsible for injuries caused by undisputed negligence is the law of this state.

Judgment affirmed.

STERNBERG, C.J., concurs.

TURSI, J., concurs in part and dissents in part.

Judge TURSI concurring in part and dissenting in part.

I am not persuaded that the previously imposed limitation on recovery set forth in § 24–10–114(1)(a), C.R.S. (1988 Repl.Vol. 10A) overrides the subsequent enactment of § 13–17–202, C.R.S. (1993 Cum.Supp.). Therefore, I dissent from that part of the majority's decision.

Section 13–17–202 was enacted, effective May 31, 1990, to encourage reasonable settlement offers by all parties so that protracted and fruitless litigation would be avoided and victims of accidents would be compensated for their injuries in a less costly and more timely fashion. *See Centric–Jones Co. v. Hufnagel,* 848 P.2d 942 (Colo.1993); Colo. Sess.Laws 1990, ch. 100 at 848.

We may not presume that the General Assembly was not fully cognizant of the policy of fiscal certainty underlying the Colorado Governmental Immunity Act, § 24–10–114, C.R.S. (1993 Cum.Supp.), inasmuch as since its passage in 1971 it had been revisited in 1979, 1981, and 1986, and its interpretation in *Lee v. Colorado Department of Health,* 718 P.2d 221 (Colo.1986), when it explicitly mandated that § 13–17–202 be applied *"[n]otwithstanding any other statute to the contrary,* in *any civil action* of *any nature* commenced or appealed in *any court* of record in this state." (emphasis added) *See Rodriquez v. Nurseries, Inc.,* 815 P.2d 1006 (Colo.App.1991).

Nor may we ignore the maxim that when construing seemingly inconsistent statutes, the most recent enactment controls. *De Jiacomo v. Industrial Claim Appeals Office,* 817 P.2d 552 (Colo.App.1991). Therefore, I will not assume that the General Assembly chose to use the plain language which marks the proviso of § 13–17–202 capriciously.

Consequently, inasmuch as there is no justification for subjugating the plain language of § 13–17–202 to the proper limitations in § 24–10–114(1)(a), I would hold that plaintiff is entitled to recover the actual costs incurred after the making of the rejected settlement offers.