James A. JACKSON, Plaintiff–Appellee,

v.

Larry G. MOORE and Wal–Mart Stores, Inc., a Delaware corporation, Defendants–Appellants.

No. 93CA1100.

Colorado Court of Appeals, Div. II.

Sept. 29, 1994.

Blain L. Boyens, David M. Bryans, Westminster, for plaintiff-appellee.

Law Offices of Charles W. Hemphill, Charles W. Hemphill, Littleton, for defendants-appellants.

Opinion by Judge MARQUEZ.

In this negligence action, defendants, Larry G. Moore and Wal–Mart Stores, Inc., appeal a judgment entered on a jury verdict in favor of plaintiff, James A. Jackson, an award of costs for the trial, and an award of attorney's fees for a mistrial. We reverse in part and affirm in part.

Because of icy conditions he encountered during the early morning hours of April 17, 1990, plaintiff pulled his truck to the right edge of the road. Deciding that it would be safer to wait until morning to continue, plaintiff positioned himself across the seat of the cab on the driver's side using the door as a backrest. Plaintiff allegedly was not wearing his seat belt at that time, and he left the engine running.

Approximately 30 to 40 minutes later, Moore, driving a Wal–Mart Stores, Inc., truck tractor, encountered black ice and struck plaintiff's parked vehicle. The collision threw plaintiff into the steering wheel, injuring his shoulder.

This action followed and first went to trial in October 1992. During cross-examination, counsel for defendants asked the investigating state patrol trooper whether any citations had been issued to defendant Moore. Plaintiff objected and a mistrial was declared. Subsequently, the trial court found that counsel for defendants had acted in bad faith or had displayed obdurate behavior, and thus, defendants were ordered to pay fees and costs related to the mistrial in the amount of $2,843.75.

Thirty-three days prior to the second trial, plaintiff filed a Motion to Supplement Disclosure Certificate, requesting the addition of a witness to testify to the adverse effect of using a "jake brake" on icy surfaces. According to one witness, a jake brake is a type of brake that creates a back pressure in the motor. Over defendants' objections, plaintiff's motion was granted, and the witness was allowed to testify.

In the second trial the jury awarded plaintiff damages of $17,000 for lost income and $23,000 for pain and suffering.

Prior to both trials, plaintiff offered to settle the case for $45,000, while defendants offered to settle for $50. The jury verdict of $40,000, was reduced by a stipulated deduction of $4,242.40 for workers' compensation wage benefits paid to plaintiff leaving a balance of $35,757.60. To this sum the court added interest in the amount of $9,784.70 and plaintiff's costs for the second trial of $1,386.42, for a total judgment of $46,928.72.

I.

Defendants argue that it was error to disallow testimony that the defendant had not

received a traffic citation, that the declaration of a mistrial was error, and that the award of attorney's fees for "obdurate behavior" was inappropriate. We do not address the propriety of the ruling on mistrial, but conclude that the court did not abuse its discretion in excluding the testimony at the second trial and reverse the award of attorney's fees.

### A.

Section 42–4–1508, C.R.S. (1993 Repl.Vol. 17) (recodified as § 42–4–1713, C.R.S. (1994 Cum.Supp.)) provides:

> Except as provided in sections 42–2–201 to 42–2–208, no record of the conviction of any person for any violation of this article shall be admissible as evidence in any court in any civil action.

Here, at the first trial defendants' counsel asked the state trooper, "whether or not you issued any citations to Mr. Moore?" Upon counsel's request to approach the bench, the court ruled that it was going to preclude any discussion on that issue, and the trooper did not answer the question. At a subsequent conference, the court ruled that the mention of a ticket, or the lack thereof, in this case had a strong tendency to invade the jury's province of determination of fault and that the circumstances were substantially prejudicial. Accordingly, it declared a mistrial.

■ Under the circumstances here, a determination of the correctness of the court's mistrial ruling would have no effect on the ultimate disposition reached in the second trial; thus, we do not address that ruling. Rather, we address only the propriety of the award of attorney's fees.

### B.

■ Whether an attorney has acted in bad faith is a factual determination, *Denver Ass'n for Retarded Children, Inc. v. School District No. 1,* 188 Colo. 310, 535 P.2d 200 (1975), and findings of the trial court will not be disturbed on appeal unless clearly erroneous and unsupported by the record. *Gebhardt v. Gebhardt,* 198 Colo. 28, 595 P.2d 1048 (1979).

■ Here, the trial court found that the question asked was prejudicial to plaintiff and could not be remedied by instruction. It then found that: "Counsel for the defendants acted knowingly, intentionally, and in bad faith or a display of 'obdurate behavior' when he asked Trooper Watkins whether a citation was issued to his client, Larry G. Moore." The court states no other reason for its finding of obdurate behavior.

We conclude that because the statute does not expressly disallow evidence of issuance (or nonissuance) of a ticket and because case authority has not addressed the question presented here, there is no basis for a finding that defendant acted in bad faith or in a display of obdurate behavior. Thus, the award of attorney's fees on this ground was improper.

### C.

However, the court did not err in disallowing testimony in the second trial that the defendant had not received a traffic citation.

■ At the second trial the trooper did not testify and the court denied defendant's request to ask defendant Moore whether he was issued a citation. The trial court ruled that it did not think the cases were dispositive of the issue and did not see how the evidence would be probative of any of the issues before the court. It therefore denied the request.

Under these circumstances, we agree with the trial court and, therefore, find no abuse of discretion in its excluding this testimony. *See Boettcher & Co. v. Munson,* 854 P.2d 199 (Colo.1993).

### II.

Defendants argue that plaintiff did not incur economic damages exceeding those covered by the personal injury protection provision of the No–Fault Act, § 10–4–706, C.R.S. (1994 Repl.Vol. 4A), and therefore, plaintiff is not entitled to any economic recovery. We disagree.

■ The amount of damages is within the sole province of the jury, and an award will not be disturbed unless it is completely un-

supported by the record. *Smith v. Hoyer,* 697 P.2d 761 (Colo.App.1984).

■ When an employment-related injury is caused by a third party tortfeasor, the injured employee has several alternatives. The employee may elect to receive workers' compensation benefits and also sue the tortfeasor for damages in excess of the amount of compensation benefits for which the insurer is liable. *Tate v. Industrial Claim Appeals Office,* 815 P.2d 15 (Colo.1991).

■ Here, plaintiff produced evidence that his wage loss resulting from the accident was $17,219.32. The jury awarded plaintiff $17,000 in damages for wage loss. By stipulation, the trial court, rather than the jury, offset the amount awarded by the jury by the amount that plaintiff had previously received in workers' compensation benefits.

Since there is support in the record for the amount of wage loss awarded by the jury, and since the trial court correctly awarded plaintiff only the amount in excess of the workers' compensation benefits, we find no error.

### III.

Defendants argue that plaintiff was in actual physical control of his vehicle at the time of the accident and that, thus, it was error for the trial court to disallow the seat belt defense to mitigate the damages award for plaintiff's pain and suffering. We disagree.

Here, plaintiff was parked almost completely off the road at the end of a pulling lane when defendant's vehicle struck him. There were trucks parked in front and behind him, all with their four-way flashers blinking, and plaintiff had been there 30 or 40 minutes before the accident occurred.

Defendants first assert that because plaintiff was in the front seat of the truck with the engine running, he fell within the scope of § 42–4–236(2), C.R.S. (1993 Repl.Vol. 17) (recodified as § 42–4–237(2), C.R.S. (1994 Cum.Supp.)), which requires a "driver" to wear a safety belt while the "motor vehicle is being operated on a street or highway in this state." We disagree.

■ Section 42–4–236(7), C.R.S. (1993 Repl.Vol. 17) (recodified as § 42–4–237(7), C.R.S. (1994 Cum.Supp.)) provides that evidence of failure to comply with § 42–4–236(2) is admissible to mitigate damages.

■ Defendants' argument correctly notes that, for the purposes of revoking a license under § 42–2–122.1, C.R.S. (1993 Repl.Vol. 17), "drove" has been defined as having "actual physical control of a motor vehicle." Thus, a person behind the wheel with the engine running, even though asleep, has "actual physical control of a motor vehicle," and therefore, it is deemed that he "drove" the vehicle within the meaning of the license revocation statute. *Brewer v. Motor Vehicle Division,* 720 P.2d 564 (Colo.1986).

■ Our primary task in construing statutory provisions is to ascertain and give effect to legislative intent. And, in order to do so, we give the language of the statute its commonly accepted and understood meaning. *Property Tax Administrator v. Production Geophysical Services, Inc.,* 860 P.2d 514 (Colo.1993).

■ When the General Assembly adopts legislation, it is presumed to be cognizant of judicial precedent relating to the subject matter under inquiry. *State Engineer v. Castle Meadows, Inc.,* 856 P.2d 496 (Colo. 1993).

Both the seat belt statute and the revocation of license statute are within the subject matter of Title 42, addressing the subjects of "Vehicles and Traffic."

In *Brewer, supra,* the court relied on the provision now codified as § 42–1–102(27), C.R.S. (1994 Cum.Supp.) which defines "driver" to mean "every person ... who drives or is in actual physical control of a vehicle."

■ As the broad definition of "drove" was adopted in *Brewer* prior to the enactment of the seat belt statute, we must presume the General Assembly was aware of this precedent when it chose the language for the seat belt statute. Hence, because it chose to use different language for the seat belt statute, we cannot presume that the legislative intent was to apply the same broad definition as used in the revocation of

license statute. As the trial court noted, the General Assembly "intended that the defense apply to someone who was, in fact, operating a vehicle which is something more than just being in actual physical control of the vehicle."

We therefore conclude that the statutory phrase "actual physical control" of the "motor vehicle" is not equivalent to the phrase "while the motor vehicle is being operated on a street or highway." Hence, plaintiff, while parked and sleeping, was not required by § 42–4–236(2) to be wearing a seat belt, and thus, he was not subject to the seat belt defense set out in § 42–4–236(7), C.R.S. (1993 Repl.Vol. 17).

## IV.

Defendants argue that it was error to allow plaintiff to recover costs when the verdict rendered was less than the plaintiff's offer of settlement. We find no error in the award of costs.

■ A plaintiff is entitled to costs if "the plaintiff makes an offer of settlement which is rejected by the defendant and the plaintiff recovers a final judgment in excess of the amount offered...." Section 13–17–202(1)(a)(I), C.R.S. (1994 Cum.Supp.). Additionally, a defendant is entitled to costs if the defendant makes an offer of settlement which is rejected by the plaintiff and the plaintiff does not recover a final judgment in excess of the amount offered. Sections 13–17–202(1)(a)(II) and 13–17–202(3), C.R.S. (1994 Cum.Supp.). However, a separate statute allows plaintiff to recover costs simply by being the prevailing party, regardless of offers of settlement. Section 13–16–104, C.R.S. (1987 Repl.Vol. 6A).

■ Our primary task in interpreting statutes is to provide a construction that will render the enactments effective in accomplishing the purposes for which they were adopted. When it appears that statutes may conflict, we are obligated to construe them in harmony in order to give effect to each. *DeCordova v. State,* 878 P.2d 73 (Colo.App. 1994).

■ When a jury returns a plaintiff's verdict which is less than the defendant's offer of settlement, arguably, the two statutes conflict. *Askew v. Gerace,* 851 P.2d 199 (Colo.App.1992). However, unlike in *Askew,* the jury verdict here exceeded the defendant's offer. Under these circumstances, we see no conflict between the two statutes.

■ Further, there is nothing in § 13–17–202 which prohibits the award of costs to plaintiff when the jury award is greater than defendant's offer of settlement. If § 13–17–202 were interpreted to prohibit the award of costs to plaintiff when the jury award is less than plaintiff's offer of settlement, then § 13–16–104 would be rendered meaningless. As we must interpret the statutes to avoid conflict, we hold that § 13–16–104 still provides costs to plaintiff when the jury award is greater than defendant's offer of settlement but less than plaintiff's offer of settlement.

■ Here, defendants offered to settle for $50. Plaintiff offered to settle for $45,-000. The jury returned an award of $40,000. There is no assertion that the addition of pre-offer interest and costs, *see Anderson v. Dunton Management Co.,* 865 P.2d 887 (Colo.App.1993), would result in a judgment in excess of plaintiff's offer. Thus, under the above construction of the statutes at issue, the trial court properly awarded plaintiff his costs under § 13–16–104.

## V.

■ There is no merit to defendants' argument that it was an abuse of discretion for the trial court to permit plaintiff to supplement his disclosure certificate.

Given that defendants were provided ample opportunity to depose the witness, were

informed of the nature of his testimony, and were not prejudiced except by their own inaction, we conclude that allowing the late endorsement was not an abuse of the trial court's discretion. *See J.P. v. District Court,* 873 P.2d 745 (Colo.1994).

That part of the judgment awarding attorney's fees following the mistrial is reversed.

In all other respects the judgment is affirmed.

STERNBERG, C.J., and TAUBMAN, J., concur.