25CA0928 Peo in Interest of Hetzel 09-18-2025

COLORADO COURT OF APPEALS
_____

Court of Appeals No. 25CA0928
Douglas County District Court No. 20MH94
Honorable Brian P. Fields, Magistrate
_____

The People of the State of Colorado,

Petitioner-Appellee,

In the Interest of Enoch Hetzel,

Respondent-Appellant.
_____

ORDER AFFIRMED

Division I
Opinion by JUDGE SCHUTZ
J. Jones and Grove, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced September 18, 2025
_____

Jeffrey A. Garcia, County Attorney, Andrew C. Steers, Deputy County Attorney, Castle Rock, Colorado, for Petitioner-Appellee

Tezak Law, P.C., Mary Tezak, Florence, Colorado, for Respondent-Appellant

¶ 1    Enoch Hetzel appeals the district court magistrate's May 2025 order authorizing a six-month extension of the order certifying him for long-term care and treatment of his mental health disorder under section 27-65-110(1)(a), C.R.S. 2025.  He contends that the evidence was insufficient to show that he is "gravely disabled."  We disagree and therefore affirm.

## I.    Background

¶ 2    In May 2020, Hetzel was admitted to AllHealth Network on a seventy-two-hour mental health hold because his symptoms were deemed too severe for him to keep himself safe.  He was diagnosed with paranoid schizophrenia.  The record reveals that Hetzel had a history of psychiatric illness and noncompliance with taking his prescribed psychotropic medication and that in 2019, he used substances "quite a bit" and had a psychotic break.

¶ 3    Hetzel was certified for three months of short-term treatment to treat his schizophrenia, which constituted a grave disability, and the certification was extended for another three months in August 2020.  At some point during that period, he began treatment on an outpatient basis.

¶ 4    In November 2020, based on the parties' stipulation, the district court certified Hetzel for six months of long-term care and treatment of his schizophrenia on an outpatient basis.  Over the next four years, the court repeatedly extended that certification for additional six-month periods, based on either the parties' stipulations or his counsel's representations to the court that Hetzel remained gravely disabled and in need of long-term care and treatment.

¶ 5    During that four-year period, Hetzel's psychologist at AllHealth submitted written statements to the court in support of the extensions of the certification.  In September 2022, Hetzel began expressing skepticism whether he had a mental illness; he also began voicing a desire for the certification to end so he could stop taking medication.

¶ 6    Also, by September 2022, Hetzel was smoking marijuana "almost every day."  But in March 2023, Hetzel reported that he had stopped smoking marijuana and, since quitting, his "mental health ha[d] gotten a lot better."  However, by March 2024, he was again smoking marijuana daily, despite reporting that his auditory hallucinations were worse when smoking marijuana.  And in

2

September 2024, he conceded that marijuana "makes [him] feel worse," said that he tried to find alternatives to marijuana like "mushrooms," and said that, rather than using exercise as a coping tool, he "use[s] drugs instead."

¶ 7     The most recent stipulated order took effect in November 2024 and was set to expire in May 2025.

¶ 8     In April 2025, the State filed the petition at issue, seeking to extend Hetzel's long-term care and treatment for an additional six months.  According to the psychologist's statement submitted with the petition, Hetzel reported that, in addition to smoking marijuana, he was drinking alcohol regularly, splitting "a bottle" with friends.

¶ 9     This time, Hetzel's counsel requested a hearing before a magistrate to contest the extension.

¶ 10    At the hearing, the parties clarified that the sole issue for the magistrate to decide was whether Hetzel was gravely disabled as a result of a mental health disorder, which is one of the bases for extending a certification for long-term care and treatment under section 27-65-110(1)(a).

¶ 11    Hetzel's psychologist at AllHealth and Hetzel both testified at the hearing.  The psychologist, whom the parties stipulated was an

3

expert in that field, testified that Hetzel's diagnoses are schizophrenia, cannabis use disorder, and alcohol use disorder. She testified that Hetzel's condition had improved since he's been on the certification "because he's been adhering to medication, and he's had a lot of support from the various team members." She reported that Hetzel was "doing fairly well" but had recently had "some decompensation regression behavior." She also testified that Hetzel has made it clear he wants to stop taking medication because he doesn't believe it's necessary, and she opined that if he stops taking his medication, "he would very quickly decompensate and be re-hospitalized." And she explained what decompensation looks like for Hetzel:

> Historically, he begins experiencing worsening hallucinations. His thought process is more disorganized. He makes poor judgments and impulse control. So what we've seen before is either taking off all of his clothes in public in the winter or wearing multiple layers of clothing, like multiple sweaters in the middle of summer. He has gotten lost and driven places without knowing where he is, run out [of] gas, and . . . there's equal periods of silence causing the family to be concerned. He has shown up in his apartment without clothing on in the public areas, resulting in police being called or roommates contacting crisis services for concern.

The psychologist then confirmed, "I believe similar behaviors would happen if he were to cease taking medication again." Finally, she testified that Hetzel's substance use reduces the efficacy of his medications, can trigger psychosis (as it did in 2019), and causes him to decompensate more quickly.

¶ 12 During Hetzel's testimony, when he was asked if he had a mental health disorder, he responded, "I believe I've gotten mental health disorders because of the medication I'm taking. But I don't believe I have a mental illness; I have a disorder." He continued, "I believe [it's] miscommunication is the biggest key part of having a mental disorder . . . or not having a mental disorder, but just the lack of communication makes it harder for other people to understand my point of view." Hetzel also made it clear that, although he was willing to continue therapy, he did not want to continue taking medication. He discussed what would happen if he stopped taking medication, and he appeared to suggest that he would initially have some withdrawal symptoms that would negatively impact his stability, but that he would eventually stabilize:

I'm not saying I'm going to be stable right away or anything. I'm just saying like the medication is what makes me unstable in the first place. So if I were to get off . . . the medication, it would make me even more unstable. . . . [I]t's like taking a drug for a long time, and then getting off the drug, . . . you're going to have side effects, you're going to have withdrawals, and . . . you're going to have negative symptoms, like with anything else you take. So I just believe . . . the medication is not helping in that sense, because there will be side effects and there will be withdrawals.

¶ 13 After hearing argument from the parties, the magistrate granted the petition to extend the certification for an additional six months. In doing so, the magistrate recognized that Hetzel "is very articulate, very pleasant, and clearly is able to articulate and advocate for . . . his needs and desires"; he is gainfully employed; and he "is able to currently meet . . . his daily needs . . . and live independently." However, the magistrate, specifically crediting the psychologist's testimony, found that if Hetzel stops taking his medication, his "ability to maintain that functioning will critically deteriorate in rapid form," leading back to "getting himself into injurious situations, having hallucinations, . . . and [being unable] to take care of his daily needs." The magistrate also found that Hetzel "doesn't believe medication is necessary" and that "it's very

6

clear to the Court that, absent a court requirement or order requiring that medication, that Mr. Hetzel is not going to continue to take the medicine." The magistrate ultimately found that "Mr. Hetzel is gravely disabled" because he "is in danger of serious, not only physical harm, but emotional harm [and] mental harm, absent the certification continuing."

## II.    Standard of Review

¶ 14    When considering a challenge to the sufficiency of the evidence, we must determine whether the evidence, viewed as a whole and in the light most favorable to the State, is sufficient to support the district court's order. *See People in Interest of Ramsey*, 2023 COA 95, ¶ 23. Resolving conflicting testimony and determining witness credibility are matters solely within the province of the fact finder. *Id.* We review de novo the court's conclusions of law and we defer to the court's findings of fact if sufficient evidence in the record supports them. *Id.*

## III.    Analysis

¶ 15    Under section 27-65-110(1), a district court may extend a certification for long-term care and treatment under the following conditions:

(a) the respondent has a mental health disorder and, as a result of the mental health disorder, is a danger to the respondent's self or others or is "gravely disabled";

(b) the respondent has been advised of the availability of, but has not accepted, voluntary treatment; but, if reasonable grounds exist to believe that the respondent will not remain in a voluntary treatment program, the respondent's acceptance of voluntary treatment does not preclude an order pursuant to this section; and

(c) the facility that will provide long-term care and treatment has been designated by the commissioner to provide the care and treatment.

¶ 16 The sole issue presented here is whether the State sufficiently proved that Hetzel is gravely disabled under section 27-65-110(1)(a). The statutory scheme defines "gravely disabled" as

> a condition in which a person, as a result of a mental health disorder, is incapable of making informed decisions about or providing for the person's essential needs without significant supervision and assistance from other people. As a result of being incapable of making these informed decisions, a person who is gravely disabled is at risk of substantial bodily harm, dangerous worsening of any concomitant

> serious physical illness, significant psychiatric
> deterioration, or mismanagement of the
> person's essential needs that could result in
> substantial bodily harm.

§ 27-65-102(17), C.R.S. 2025. The State has the burden to prove by clear and convincing evidence that a patient is gravely disabled. § 27-65-113(1), C.R.S. 2025; *Ramsey*, ¶ 25. A physician's credible testimony alone may constitute clear and convincing evidence. *See People v. Pflugbeil*, 834 P.2d 843, 846-47 (Colo. App. 1992).

¶ 17    Hetzel argues that he is not gravely disabled because he "can take care of his own basic needs," such as living independently, working a job to support himself, cooking his own meals, and maintaining social connections.

¶ 18    However, under the statute, a person is gravely disabled if he "is incapable of . . . providing for [his] essential needs," *or if he "is incapable of making informed decisions about . . . [his] essential needs*," without significant supervision and assistance from other people. § 27-65-102(17) (emphasis added). So, although Hetzel may be currently capable of "providing for" his essential needs (which, as the record indicates, is because he has been taking his

medication), he is gravely disabled if he is "incapable of making informed decisions about" his essential needs. *Id.*

¶ 19 The second sentence in section 27-65-102(17) clarifies that a person who is "incapable of making informed decisions about" his essential needs is "at risk of," among other things, "significant psychiatric deterioration." That is the central issue here: whether Hetzel is incapable of making informed decisions about his essential needs and, as a result, is at risk of significant psychiatric deterioration.

¶ 20 On that subject, the county attorney had the following exchange with the psychologist during her testimony at the hearing:

> Q    You mentioned earlier Mr. Hetzel's desire to get off medication. Do you currently believe that he is capable of making informed decisions about meeting his essential needs?
>
> A    I believe where he is right now on medication, yes.

However, the county attorney then reframed the question, and the following exchanges occurred:

> Q    Do you believe that [Hetzel] is currently capable of making informed decisions about medical needs, including his ability to continue taking medication?

A    No.

Q    Why not?

A    I do not believe that he thinks the medication is necessary.  He thinks that it has caused him to have hallucinations, rather than it aiding in stabilizing the symptoms.  And so I think he has no insight into how the medication is keeping him stable and doing well and remaining out of the hospital.

Q    Do you believe that that is a result of his mental illness?

A    Yes.

¶ 21    That testimony — along with the psychologist's testimony about the decompensation that Hetzel would experience if he stops taking his medication — sufficiently supports the magistrate's finding that Hetzel is gravely disabled.  *See Ramsey*, ¶ 23; *Pflugbeil*, 834 P.2d at 846-47.  The testimony establishes that Hetzel continuing to take his medication is an "essential need[]" for him to avoid "significant psychiatric deterioration."  Therefore, the record supports the magistrate's findings that Hetzel is incapable of making an informed decision about taking his medication, and that he is therefore gravely disabled.

¶ 22    Hetzel argues that the State's position is that he will "*become* gravely disabled" if he stops taking his medication, but the

11

determination of grave disability "must be based on [his] existing condition, not prospective." But that argument focuses too narrowly on the question of whether Hetzel is currently "providing for" his essential needs; it ignores the alternative basis for a finding of grave disability because Hetzel is "incapable of making informed decisions about" his essential needs. § 27-65-102(17). Likewise, under the second sentence of section 27-65-102(17), a person need not have already experienced "significant psychiatric deterioration" to be gravely disabled; instead, a person need only be "at risk of" significant psychiatric deterioration based on his inability to make informed decisions about his essential needs.

¶ 23      Hetzel also argues that the issue of whether he will take his medication solely pertains to the "voluntary treatment" provision in section 27-65-110(1)(b), and that it cannot be considered for purposes of determining whether he is gravely disabled under section 27-65-110(1)(a). We disagree. As applicable here, section 27-65-110(1)(b) simply clarifies that a certification can be extended, even if the respondent has accepted voluntary treatment, "if reasonable grounds exist to believe that the respondent will not remain in a voluntary treatment program." But the question of

12

whether a patient will remain in a voluntary treatment program under section 27-65-110(1)(b) is not entirely distinct from the question of whether he is capable of making informed decisions about his essential needs. That there may be overlap between the provisions as applied in this case is not problematic. *See People v. Market*, 2020 COA 90, ¶ 18 ("When it appears that two statutes conflict, we strive to 'construe the statutes in harmony [to] give effect to each.'" (quoting *DeCordova v. State*, 878 P.2d 73, 75 (Colo. App. 1994))); *see also Larson v. Sinclair Transp. Co.*, 2012 CO 36, ¶ 71 n.7 (Hobbs, J., dissenting) ("The fact that overlapping condemnation statutes exist does not render any of the overlapping statutes superfluous or command any particular interpretation."); *Avery v. State*, 359 S.W.3d 230, 236 (Tex. Crim. App. 2012) ("When statutory provisions overlap . . ., there is no inherent reason to infer that the Legislature intended them to be mutually exclusive.").

## IV.  Disposition

¶ 24    The order is affirmed.

JUDGE J. JONES and JUDGE GROVE concur.