24CA0531 Peo v Nunez-Bustamante 02-19-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA0531
El Paso County District Court No. 22CR5042
Honorable Lin Billings Vela, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Joseph Nunez-Bustamante,

Defendant-Appellant.

---

JUDGMENT AFFIRMED

Division I
Opinion by JUDGE MEIRINK
J. Jones and Lum, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced February 19, 2026

---

Philip J. Weiser, Attorney General, Jessica E. Ross, Senior Assistant Attorney General and Assistant Solicitor General, Denver, Colorado, for Plaintiff-Appellee

Tillman Clark, Alternate Defense Counsel, Denver, Colorado, for Defendant-Appellant

¶ 1     Defendant, Joseph Nunez-Bustamante, appeals the sentencing court's denial of his request for presentence confinement credit (PSCC) against his three-year sentence to the Youth Offender System (YOS).  We affirm.

I.     Factual and Procedural Background

¶ 2     According to Nunez-Bustamante's presentence investigation report (PSIR), he used a fake Facebook account to message the victim for the express purpose of setting her up to be robbed by two of his friends.  He messaged the victim with the pretext of purchasing marijuana and told her to meet him at a location where, unbeknownst to her, his friends would be waiting.  During the planning of the robbery, Nunez-Bustamante suggested to his friends that they arm themselves.  Although Nunez-Bustamante was not physically present for the robbery, he informed his friends when the victim arrived at the agreed-upon location.  Nunez-Bustamante's friends then approached the victim's car, threw counterfeit money at her, drew a firearm, and told her to give them her belongings.  One of the robbers took the victim's belongings, including the marijuana, from her at gunpoint.  The victim reported hearing "multiple guns being fired at once."

1

¶ 3    For his participation in the incident, Nunez-Bustamante was originally charged with twenty-four counts.  As part of a global plea agreement involving the underlying case and two other juvenile cases, however, Nunez-Bustamante pleaded guilty to (1) aggravated robbery under section 18-4-302(1)(d), C.R.S. 2025, a class 3 felony; and (2) a crime of violence under section 18-1.3-406(2)(a)(I)(A), C.R.S. 2025, a special sentence enhancer.  In the plea agreement, Nunez-Bustamante stipulated to a three-year YOS sentence with a suspended twelve-year sentence in the custody of the Department of Corrections (DOC).  Nunez-Bustamante had served 536 days in presentence confinement.

¶ 4    At sentencing, defense counsel asked the court to award Nunez-Bustamante credit for his presentence confinement, arguing that even if Nunez-Bustamante were awarded 365 days of PSCC, he would still meet the minimum two-year YOS sentence.  Nunez-Bustamante then read a prepared written statement.  The court recognized that the statement was articulate and thoughtful and demonstrated that he was already thinking about doing better.  But it declined to award PSCC for the following reasons:

- In the court's experience, to see "somebody successfully restored" in the YOS, a three-year sentence was "therapeutically appropriate."

- The court didn't want to condense the YOS sentence, which consisted of three phases, requiring Nunez-Bustamante to work to complete his education and engage in community programs, which would take time.

- The court wanted to ensure that Nunez-Bustamante continued to receive counseling and substance use treatment as he matured and came into "the right frame of mind."

- The court wanted to "make sure [Nunez-Bustamante had] the maximum amount of time to benefit from [YOS] programming," while not "diminish[ing] in anyway [sic] . . . the seriousness of these offenses."

- The time spent in the program would allow Nunez-Bustamante to acquire "amazing tools and skills when [he left] YOS" and returned home to his family.

Accordingly, the court sentenced Nunez-Bustamante to a controlling three-year sentence in the YOS with no PSCC.

## II. Analysis

¶ 5　Nunez-Bustamante contends that the court erred by declining to award him PSCC for three reasons: (1) the court applied *People v. Garcia*, 2016 COA 124, which incorrectly interpreted section 18-1.3-407(2)(a)(I), C.R.S. 2025, and was wrongly decided; (2) the court abused its discretion by determining that, in Nunez-Bustamante's case, granting PSCC was inappropriate; and (3) a discretionary interpretation of section 18-1.3-407(2)(a)(I) violates equal protection. We disagree with these contentions.

### A.　*Garcia* and Section 18-1.3-407(2)(a)(I)

¶ 6　Nunez-Bustamante first urges us to depart from *Garcia,* which he argues misinterpreted section 18-1.3-407(2)(a)(I) by holding that an award of PSCC for a YOS offender is discretionary. He asserts that the division's interpretation conflicts with section 18-1.3-405, C.R.S. 2025, which requires courts to apply PSCC, and that the court erroneously considered section 18-1.3-407(2)(a)(I) in isolation instead of considering it in the broader context of the YOS statute. We are unpersuaded and decline to depart from *Garcia.*

### 1. Standard of Review and Applicable Law

¶ 7     "Statutory interpretation is a question of law we review de novo." *A.S. v. People*, 2013 CO 63, ¶ 10.  When interpreting a statute, our primary purpose is to ascertain and give effect to the intent of the legislature.  *People v. Market*, 2020 COA 90, ¶ 16.  We assume that the intent of the legislature "has been expressed in the chosen language." *People v. Coleman*, 2018 COA 67, ¶ 41.  We look first to the statute's language and seek "to give its words and phrases their plain and ordinary meanings." *Market*, ¶ 16.  Statutory words and phrases are read in context and construed "according to the rules of grammar and common usage." *McCoy v. People*, 2019 CO 44, ¶ 37.  "We must construe the statute so as to give effect to every word, and we may not adopt a construction that renders any term superfluous or meaningless." *People v. Rice*, 2015 COA 168, ¶ 12.

¶ 8     If the statute is clear and unambiguous, we look no further and apply the statute as written.  *People v. Sullivan*, 53 P.3d 1181, 1182 (Colo. App. 2002).  When the plain language of a statute is ambiguous or conflicts with other statutes, we may look to other tools of statutory interpretation.  *Coleman*, ¶ 41.  "When it appears

5

that two statutes conflict, we strive to 'construe the statutes in harmony [to] give effect to each.'" *Market*, ¶ 18 (quoting *DeCordova v. State*, 878 P.2d 73, 75 (Colo. App. 1994)). We are obligated to interpret two conflicting statutes in a manner that avoids inconsistency. *Id.* "When the General Assembly chooses to legislate in an area, we presume it is aware of its own prior enactments." *A.S.*, ¶ 11.

¶ 9 Section 18-1.3-405 provides that

> [a] person who is confined for an offense prior to the imposition of sentence for said offense is entitled to credit against the term of his or her sentence for the entire period of such confinement. At the time of sentencing, the court shall make a finding of the amount of presentence confinement to which the offender is entitled and shall include such finding in the mittimus.

Section 18-1.3-407(2)(a)(I) provides, in relevant part, that "[t]he court *may* award an offender sentenced to the [YOS] credit for presentence confinement; except that such credit shall not reduce the offender's actual time served in the [YOS] to fewer than two years." (Emphasis added.) And section 18-1.3-407(1)(d) provides that "[i]t is the intent of the general assembly that offenders sentenced to the [YOS] be sentenced as adults and be subject to all

6

laws and [DOC] rules, regulations, and standards pertaining to adult inmates, except as otherwise provided in this section."

¶ 10    In *Garcia*, this court analyzed whether "may" in section 18-1.3-407(2)(a)(I) means "shall" because section 18-1.3-407(1)(d) requires courts to sentence YOS offenders as adults, or whether "may" is permissive and gives courts discretion to award PSCC to YOS offenders. *Garcia*, ¶¶ 4-5. The division concluded that "[t]he legislature's use of the term 'may' is generally indicative of a grant of discretion or choice among alternatives," *id.* at ¶ 13 (citation omitted), and held that the word "may" does "not mandate that a court award PSCC when it sentences a defendant to the YOS," *id.* at ¶ 18. Instead, consistent with its unambiguous and ordinary meaning, the word "may" gives the court discretion to "determin[e] whether to award PSCC based on the circumstances of each case," consistent with the purpose of the YOS. *Id.*

### 2.    Analysis

¶ 11    Nunez-Bustamante asks us to decide the same question presented in *Garcia* — whether sentencing courts have discretion under section 18-1.3-407(2)(a)(I) to award PSCC when section 18-1.3-407(1)(d) requires YOS offenders to be sentenced as adults, and

section 18-1.3-405 requires courts to award PSCC when a defendant is sentenced to the DOC. He claims that the statutory provisions conflict with one another, which is the same argument the defendant in *Garcia* made. Next, he argues that "may" in section 18-1.3-407(2)(a)(I) refers to the court's discretion to sentence a juvenile to YOS, not its discretion to award PSCC, which is still governed by section 18-1.3-405.

¶ 12     First, while we aren't bound by the decisions of other divisions, *Garcia* already concluded — and we agree — that the statutory provisions do not conflict. *See Chavez v. Chavez*, 2020 COA 70, ¶ 13 (one division is not bound by the holding of another division). Section 18-1.3-407(1)(d) requires YOS offenders to be "sentenced as adults" and to be subject to the same laws as adult inmates, "except as otherwise provided in this section." Considering the plain language of section 18-1.3-407(1)(d) in the context of the YOS, the General Assembly intended for section 18-1.3-407(2)(a)(I) to control over the general law applicable to adult offenders. Simply put, the legislature specified that courts have discretion to award PSCC for YOS offenders. The clause prevents inconsistency between the discretionary credit in section 18-1.3-

407(2)(a)(I) and mandatory credit in section 18-1.3-405. This is consistent with the legislature's intent that the YOS statute's provisions control over any conflicting provisions. Finally, interpreting section 18-1.3-407(2)(a)(I) as mandatory would be contrary to the rehabilitative purpose of the YOS, which is to provide a sentencing alternative for YOS offenders. *Garcia*, ¶ 15.

¶ 13    Second, we reject Nunez-Bustamante's argument that the "may" in section 18-1.3-407(2)(a)(I) refers to the court's discretion to sentence an offender to the YOS instead of to the DOC and not to the application of PSCC after YOS is selected. Nunez-Bustamante claims that, once the court exercises its discretion to impose a YOS sentence, it must follow the same rules regarding PSCC that apply to all DOC sentences.

¶ 14    The first sentence of section 18-1.3-407(2)(a)(I) provides that "[a] juvenile *may* be sentenced to the [YOS] created pursuant to this section . . . ." (Emphasis added.) That "may" exists in a sentence independent from the "may" contained in the sentence, "The court *may* award an offender sentenced to the [YOS] credit for presentence confinement." § 18-1.3-407(2)(a)(I) (emphasis added). Interpreting the statute as Nunez-Bustamante asks us to would fail

to give effect to the General Assembly's choice to use "may," both when referring to sentencing a juvenile to YOS and to granting PSCC. Contrary to what Nunez-Bustamante contends, courts have discretion to sentence juvenile offenders to the YOS *and* to award YOS offenders PSCC. Further, reading the second "may" as mandatory would fail to give effect to the plain meaning of "may" and would conflict with the General Assembly's choice to use the mandatory "shall" in other parts of the subsection. *See A.S.,* ¶ 21 ("Where both mandatory and directory verbs are used in the same statute, . . . it is a fair inference that the legislature realized the difference in meaning, and intended that the verbs should carry with them their ordinary meanings." (citation omitted)). Accordingly, we decline to adopt Nunez-Bustamante's reading of the statute.

¶ 15    Finally, Nunez-Bustamante contends that the rule of lenity applies because *Garcia* created ambiguity by acknowledging that YOS offenders are subject to the laws pertaining to adults but that "that overlay must yield to the extent [that] it is at odds with the YOS statute's broader objectives." *Garcia,* ¶ 16. The rule of lenity is "a rule of last resort invoked only 'if after utilizing the various

aids of statutory construction, the General Assembly's intent remains obscured.'" *People v. Summers*, 208 P.3d 251, 258 (Colo. 2009) (quoting *People v. Thoro Prods. Co.*, 70 P.3d 1188, 1198 (Colo. 2003)).  Because, for the reasons explained, sections 18-1.3-407(1)(d) and 18-1.3-407(2)(a)(I) are unambiguous, the rule of lenity doesn't apply.

### B.    Abuse of Discretion

¶ 16    Nunez-Bustamante contends that even if *Garcia* correctly interpreted section 18-1.3-407(2)(a)(I), the court abused its discretion because its decision to deny PSCC was punitive and contradicted the court's assessment of his rehabilitative potential. We disagree.

### 1.    Standard of Review and Applicable Law

¶ 17    We review de novo a sentencing court's interpretation of the statutory sentencing scheme.  *Rice*, ¶ 10.  But we review the court's refusal to award PSCC for an abuse of discretion.  *Garcia*, ¶ 21. The sentencing court abuses its discretion when its ruling is manifestly arbitrary, unreasonable, or unfair or when it misapplies or misinterprets the law.  *People v. Chavez*, 2020 COA 80M, ¶ 8; *People v. Hoskins*, 2014 CO 70, ¶ 17.

¶ 18    The purpose of the YOS is to provide, "as a sentencing option for certain youthful offenders[,] a controlled and regimented environment that affirms dignity of self and others, promotes the value of work and self-discipline, and develops useful skills and abilities through enrich[ing] program[s]." § 18-1.3-407(1)(a). The program was created to provide "a new approach to solving the problem of violent juvenile offenders." *People v. Espinoza*, 990 P.2d 1117, 1119 (Colo. App. 1999) (quoting § 16-11-311(12), C.R.S. 1998) (analyzing the YOS statute in its previous location at 16-11-311(12), C.R.S. 1998). The program provides juvenile offenders highly structured community supervision and education and treatment programs. *People v. Miller*, 25 P.3d 1230, 1231 (Colo. 2001). Although courts have discretion to award PSCC, to achieve its rehabilitative purpose, the court cannot reduce an offender's YOS sentence below two years. § 18-1.3-407(2)(a)(I). A sentence to the YOS therefore "should be more rehabilitative than punitive." *Garcia*, ¶ 15.

### 2.    Analysis

¶ 19    Nunez-Bustamante contends that the court's denial of PSCC is counter to the statute's rehabilitative purpose. Specifically, he

argues the court's statements that it didn't want to "diminish the seriousness of the offenses" demonstrate that it denied PSCC for punitive reasons.

¶ 20    While part of the court's rationale in denying PSCC was to not diminish the seriousness of the offenses, the court emphasized that its main reason for denying the request was to allow sufficient time for rehabilitation and treatment. The court recognized the need to address Nunez-Bustamante's mental health and substance use issues. It emphasized that while Nunez-Bustamante had been working with a probation officer, he had not prioritized his treatment. The PSIR supports the court's assessment of treatment and describes how Nunez-Bustamante struggled with mental health and substance abuse issues, including prior cocaine use. The court stated that it wanted Nunez-Bustamante to be successful and have the maximum benefit from the program.

¶ 21    Nunez-Bustamante also asserts that by denying PSCC, the court failed to recognize his rehabilitative potential. However, because the court recognized his rehabilitative potential, it didn't want to condense the time in which Nunez-Bustamante had to complete the multiple phases of the program. Further, the court

13

stated that while Nunez-Bustamante exhibited a desire to do better, he wasn't yet at the point where he prioritized his treatment and learned from his mistakes so he could move forward. The PSIR supports the court's assessment. The detective who prepared the PSIR noted that Nunez-Bustamante attended substance abuse treatment and cognitive skills groups but didn't follow through with treatment goals, appointments, or urinary analysis tests. Similarly, in discussing probation supervision, the PSIR indicated that Nunez-Bustamante "did not put in the effort to make the changes he knew he needed to make."

¶ 22 The court recognized Nunez-Bustamante's desire to do better. But it also acknowledged that he would benefit from more time in the program to reach his rehabilitative potential. The court's rationale for denying PSCC was supported by Nunez-Bustamante's rehabilitation needs, his past participation with treatment efforts, and the intensity of the program. The sentence was in line with *Garcia* and the statutory purpose of the YOS, and we discern no abuse of discretion.

## C. Unpreserved Equal Protection Challenge

¶ 23    Nunez-Bustamante contends that the court erred by denying him PSCC because interpreting 18-1.3-407(2)(a)(I) as discretionary violates federal and state equal protection guarantees by creating disparate treatment between YOS and DOC inmates, and between YOS offenders who can afford bond and those who cannot. We disagree.

### 1. Preservation

¶ 24    Nunez-Bustamante acknowledges that he did not explicitly raise this issue before the sentencing court but asks us to exercise our discretion to consider his unpreserved constitutional challenge. He does, however, assert that the argument presented before the court implicated the constitution. Because a constitutional challenge to a statute must be explicitly raised, Nunez-Bustamante did not preserve his constitutional challenge. *See People v. Allman*, 2012 COA 212, ¶ 13 ("Constitutional arguments must be explicitly raised in the trial court; implicit claims are unpreserved.").

¶ 25    We review this contention for plain error. *See People v. Price*, 2023 COA 96, ¶ 47 ("[W]e only reverse unpreserved constitutional errors for plain error."). An error is plain when it is obvious and

15

substantial.  *Hagos v. People*, 2012 CO 63, ¶ 14.  An obvious error is one that "contravene[s] a clear statutory command, a well-settled legal principle, or established Colorado case law," *People v. Crabtree*, 2024 CO 40M, ¶ 42, and that a judge should be able to avoid without the benefit of an objection, *People v. Conyac*, 2014 COA 8M, ¶ 54.  "An error is 'substantial' enough to warrant reversal if it 'so undermine[d] the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the judgment of conviction.'"  *People v. Perez*, 2024 COA 94, ¶ 26 (quoting *Cardman v. People*, 2019 CO 73, ¶ 19).

## 2.    The Equal Protection Clause

¶ 26    The Equal Protection Clause of the Fourteenth Amendment prohibits states from denying "to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV, § 1. Colorado doesn't have an equal protection clause, but our supreme court has construed the due process clause of the Colorado Constitution to imply a similar guarantee.  *Dean v. People*, 2016 CO 14, ¶ 11.  The level of judicial scrutiny we apply when a defendant raises an equal protection challenge depends on the type of classification identified and the nature of the right affected.  *People*

*v. Hernandez*, 2021 CO 45, ¶ 38.  "We apply rational basis review where, as here, the challenged law does not impact a traditionally suspect class or implicate a fundamental right."  *Dean*, ¶ 12.  Under rational basis review, the party challenging the law "must prove that the statute's classification bears no rational relationship to a legitimate legislative purpose or government objective, or that the classification is otherwise unreasonable, arbitrary, or capricious."  *Id.*

### 3.  Analysis

¶ 27    Nunez-Bustamante argues that the discretionary interpretation of section 18-1.3-407(2)(a)(I) violates equal protection because it creates two unconstitutional disparities — one that treats YOS offenders differently from DOC inmates and a second that creates disparity between wealthy and indigent YOS offenders.  We disagree with both contentions.

¶ 28    First, courts have already rejected similar equal protection arguments to a discretionary adult PSCC statutory scheme.  Before section 18-1.3-405 mandated PSCC for DOC offenders, courts had discretion to award PSCC to adults.  *People v. Dennis*, 649 P.2d 321, 321 (Colo. 1982).  When the discretionary scheme was

17

challenged on equal protection grounds, our supreme court rejected the argument, stating that "[i]dentical arguments have been found to be without merit and rejected by this court." *Id.* at 322-23. Additionally, as previously mentioned, the purpose of the YOS system is to provide a sentencing alternative that allows for intensive supervision and rehabilitation of juvenile offenders, while providing education and treatment to YOS offenders. *Garcia*, ¶ 15; § 18-1.3-407(1)(a). Providing courts with discretion to award PSCC in YOS cases — while making PSCC mandatory for DOC offenders — is rationally related to the YOS's purpose because courts can tailor a sentence to the YOS offender's individual educational, treatment, and rehabilitative needs. *See People v. Alderman*, 720 P.2d 1000, 1002 (Colo. App. 1986) ("Rehabilitation, one of the purposes of sentencing, constitutes a legitimate state interest.").

¶ 29     Second, Nunez-Bustamante contends that the discretionary PSCC system creates wealth-based disparity among YOS inmates. Although he offers a hypothetical situation illustrating the difference between a wealthy YOS offender and an indigent one, he doesn't articulate how discretionary PSCC is unreasonable or

18

arbitrary or fails to meet the legislature's purpose or objective of providing an alternative sentencing scheme designed to rehabilitate, educate, and treat YOS offenders. Because his argument is undeveloped, we decline to consider it on the merits. *See People v. Stone*, 2021 COA 104, ¶ 52. We therefore perceive no error with the court's interpretation and application of section 18-1.3-407(2)(a)(I) as it pertains to Nunez-Bustamante's equal protection challenge.

¶ 30 Even if the court erred, any error was not obvious under the plain error review standard. With respect to similarly situated YOS and DOC inmates, the cases addressing PSCC before section 18-1.3-405 was enacted held that there is no constitutional right to PSCC. *People v. Jones*, 489 P.2d 596, 600 (Colo. 1971) ("Without legislation, credit for [presentence] confinement is not a matter of right . . . ."). Because such challenges have already been rejected, the court didn't contravene a well-settled legal principle or established case law, and there was no obvious error. Likewise, with respect to Nunez-Bustamante's argument that the discretionary application of PSCC causes disparity between YOS inmates, any error was not obvious because the court was required

to follow and apply *Garcia*. Accordingly, the court did not plainly

err by denying Nunez-Bustamante PSCC.

### III. Disposition

¶ 31 The judgment is affirmed.

JUDGE J. JONES and JUDGE LUM concur.